**SIMPSON et ux. v. DRAKE.**

No. 14170—Opinion Filed July 17, 1923.

(Syllabus.)

1. **Husband and Wife—Resulting Trusts—Purchase of Property by Husband with Wife's Funds.**

Where property is purchased by the husband with funds furnished by, or belonging to, his wife, a resulting trust will, as a general rule, be presumed to arise in favor of the wife; but such resulting trust arises only where it may be reasonably presumed to be the intention of the parties, as determined from the facts and circumstances existing at the time of the transaction out of which the resulting trust is sought to be established.

2. **Same—Judgment—Reversal.**

Evidence examined, and held, that the judgment of the trial court is clearly against the weight of the evidence.

Error from District Court, Kay County; J. W. Bird, Judge.

Action by Leroy Drake against C. W. Simpson et ux. to subject property to payment of judgments. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions.

L. A. Maris, for plaintiffs in error.

J. E. Burns and B. C. Wieck, for defendant in error.

COCHRAN, J. Defendant in error commenced this action for the purpose of sub-

jecting certain real estate, the record title to which was in C. W. Simpson, to the payment of certain judgments procured by the defendant in error against the plaintiff in error Mrs. Simpson. The parties will hereinafter be referred to as plaintiff and defendants as they appeared in the trial court.

Upon a trial of the case, judgment was rendered for the plaintiff, and defendants have appealed. Mrs. Simpson was a Ponca Indian, and, as such, there was allotted to her 80 acres of land in Kay county. Defendants were married on March 25, 1921, and shortly thereafter the 80 acres of land belonging to Mrs. Simpson was sold through the Indian agency, subject to the approval of the Secretary of the Interior. The land was purchased by Ben Dawson for $4,000, and upon approval of the sale by the Secretary of the Interior a check for $4,000, representing the purchase price of the land, was delivered to Mrs. Simpson. This check was indorsed by the payee and the defendants delivered the check to Ben Dawson in consideration of Dawson's deeding the property which he had purchased to C. W. Simpson. A mortgage was then executed by Simpson and his wife for $2,500, and of this loan $1,875 was paid to Ben Dawson in payment of money which he had previously loaned to the Simpsons. Plaintiff filed this suit, alleging that, although the record title of the property was in C. W. Simpson, it was really owned by his wife and held in trust by him for her, and asking that judgments which he held against Mrs. Simpson be decreed a lien against said property. The trial court found for the plaintiff, and ordered the property subjected to the lien of plaintiff's judgments.

The defendants contend that both the legal and equitable title to the property was in C. W. Simpson, and that Mrs. Simpson had no interest therein. C. W. Simpson and his wife both testified that at the time of their marriage, Mrs. Simpson was indebted to C. W. Simpson in the sum of $3,330, represented by a promissory note executed on March 21, 1921. They contended that from September 30, 1919, to December 29, 1920, the defendant Mrs. Simpson had become indebted to C. W. Simpson for automobile hire and cash advanced, which amounts were represented by 14 promissory notes, and that on March, 1921, the note for $3,330 was taken in lieu of the 14 small notes. They also contended that of the $1,875 which was paid to Dawson, a portion thereof was for the indebtedness of Mrs. Simpson and a portion for the indebtedness of C. W. Simpson. They further testified that the check received from the Indian agency by Mrs. Simpson was delivered to C. W. Simpson in settlement of the $3,330 due Simpson and their joint indebtedness to Dawson, C. W. Simpson assuming liability for the $2,500, which was placed on the property and which was used principally to satisfy the Dawson indebtedness.

The trial court evidently concluded that the testimony of the Simpsons relative to the $3,330 for automobile hire and cash advanced during the period of 14 months was inherently improbable, and for that reason disregarded that testimony and concluded that the other evidence showed that the land, the record title to which was in C. W. Simpson, was purchased with the money of his wife and a resulting trust was thereby created. The testimony of C. W. Simpson was to the effect that the $4,000 check which his wife received for her land was delivered to him, and the land purchased by him from Dawson and a loan of $2,500 placed thereon, and that the note of Mrs. Simpson to him was credited with the difference after satisfying the Dawson loan. If this testimony truly states the transaction, the land so purchased was not purchased with the funds of Mrs. Simpson and could in no event be considered as trust property on that theory. The money which Mrs. Simpson received was not liable for the payment of the debt due the plaintiff, and the plaintiff could not complain of its transfer to C. W. Simpson.

The act of Congress of June 30, 1906, as contained in 1909 Supp. Fed. Stat. Ann., p. 207, provides:

"Trust Funds. That no money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt, or claim, against such Indian contracted or arising during such trust period, or, in the case of a minor during his minority, except with the approval and consent of the Secretary of the Interior."

There are some statements in the testimony of Dawson which tend to show that at the time the land was transferred, Mrs. Simpson still retained the check and that she indorsed same and delivered it to him in consideration of the transfer of the property to her husband, and it is by this testimony that plaintiff contends the resulting trust is shown. As a general rule, it may be said that a resulting trust arises where it is shown that the purchase was made with the money or assets furnished by, or belonging to, the wife, where the title is taken in the name of the husband, but, as stated in 39 Cyc. 105:

"The doctrine of resulting trusts is founded upon the presumed intention of the par-

ties; and as a general rule such a trust arises where, and only where, such may be reasonably presumed to be the intention of the parties, as determined from the facts and circumstances existing at the time of the transaction out of which it is sought to be established."

Even though we should conclude that the testimony of the Simpsons, as to the amount of the indebtedness of Mrs. Simpson to C. W. Simpson and the manner in which the indebtedness was incurred, is inherently improbable, we are of the opinion that the clear weight of the evidence shows that at the time the title to this property was taken in the name of C. W. Simpson he was asserting a claim against his wife which she recognized, and still recognizes, and that the transfer of the property from Ben Dawson to C. W. Simpson was with her knowledge and consent, and with the intention of placing the title in C. W. Simpson. In these circumstances, no resulting trust was created and the property is not liable for the debts of Mrs. Simpson.

The judgment of the trial court is reversed, and cause remanded, with directions to enter judgment for the defendants.

JOHNSON, C. J., and McNEILL, KENNAMER, NICHOLSON, BRANSON, and HARRISON, JJ., concur.