Note.—See under (1) 4 C. J. pp. 830, 832, §2813; p. 833, §2814; 20 R. C. L. p. 227; 3 R. C. L. Supp. p. 1046; 4 R. C. L. Supp. p. 1347; 5 R. C. L. Supp. p. 1091; 6 R. C. L. Supp. p. 1109. (2) 38 Cyc. pp. 1595, 1610, 1612, 1632, 1633, 1640; 14 R. C. L. p. 799; 3 R. C. L. Supp. p. 289; 5 R. C. L. Supp. p. 779. (3) 29 Cyc. pp. 790, 791.

---

**EXCHANGE TRUST CO., Adm'r, v. GODFREY et al.**

No. 16899. Opinion Filed July 26, 1927.

Rehearing Denied Nov. 29, 1927.

(Syllabus.)

1. **Mortgages—Deed Absolute and Separate Agreement for Reconveyance upon Payment of Consideration Construed as Mortgage.**

A deed absolute on its face and a separate agreement executed on the same date, wherein the grantee agrees to reconvey the real estate to the grantor upon the payment of the consideration named in the deed on a specified time, constitute together a mortgage.

2. **Same—Effect as Unrecorded Mortgage Unless Both Instruments Recorded Together.**

Unless such instruments are filed and recorded together, they and each of them shall have no other effect than an unrecorded mortgage, and the recording of the principal instruments shall secure no rights to the holder thereof.

3. **Vender and Purchaser—Requisite Averments of Plea of Bona Fide Purchaser.**

Essential and necessary averments of a

plea of bona fide purchaser for value, without notice of defect, must state the deed of purchase, the date, parties, that the vendor was seized in fee and in possession. The consideration must be stated, with a distinct averment that it was bona fide and truly paid; notice must be denied previously to and down to the time of paying the consideration; the answer or plea must show how the grantor acquired title.

### 4. Trusts—Resulting Trust—Presumption Where Title Taken in Name of Husband to Property Purchased with Funds of Wife.

Where property is purchased by funds of the wife, and title thereto is placed in the husband's name, presumption arises that he holds the property in trust for her, this upon the obligation of the husband to furnish the wife's support.

### 5. Vendor and Purchaser—Bona Fide Purchasers—Plea Defeated by Knowledge that Vendor was Incarcerated Charged with Murder of Spouse.

Section 11319, Compiled Oklahoma Statutes, 1921, provides that no person convicted of having taken or caused or procured to be taken the life of another shall inherit from such person, or receive any interest in the estate of the decedent, or take by device or legacy or descent or distribution from him or her any portion of his or her estate, etc., and in view of this statute, the fact that one is incarcerated and stands charged with the murder of his spouse is sufficient notice to any one dealing with him for an interest in real estate to place such a person or persons under the duty of making inquiry as to the fact. And such fact known to purchasers of real estate is sufficient to defeat a plea of innocent purchaser for value.

### 6 Action—Quieting Title—Joining Action with Action for Possession—Sufficiency of Pleading.

Section 466, Compiled Oklahoma Statutes, 1921, provides that an action may be brought for the purpose of determining an adverse estate or interest in real estate and joined with an action to recover possession of such real estate, by any person not in possession. This statute is liberally construed, and if in addition to an action for determining an adverse estate or interest in real estate, a plaintiff states such allegations as would, if proved, entitle plaintiff to possession, with a general prayer for relief, such pleading states a cause of action sufficient to warrant the relief sought.

### 7. Judgment not Sustained.

Record examined, and held, that the property in question was purchased by the funds of the deceased wife, and constituted her separate and individual property and her

heirs at law are entitled to have declared and enforced a trust to such property; that the judgment of the trial court is clearly against the weight of the evidence. Reversed and remanded, with directions to render judgment in accordance with the views herein expressed.

Error from District Court, Tulsa County; A. S. Wells, Assigned Judge.

Action by the Exchange Trust Company, administrator of the estate of Bertha Godfrey, deceased, against J. F. Godfrey et al. for the enforcement of a trust, the appointment of a receiver, to determine heirship, and to quiet title. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

J. J. Henderson and Linn & Spradling, for plaintiff in error.

A. F. Moss, J. C. Farmer, John L. Ward, L. G. Owen, W. A. Chase, and A. B. Campbell, for defendants in error.

RILEY, J. The Exchange Trust Company, a corporation, as administrator of the estate of Bertha Godfrey, deceased, commenced this action for the enforcement of a trust, for the appointment of a receiver, to determine heirship, and to quiet title.

The facts alleged were that Bertha Godfrey, by gunshot wound, was murdered by her husband, J. F. Godfrey, in Tulsa on September 9, 1922, and she died without issue, leaving surviving her, J. F. Godfrey, her husband, L. D. Day and Nancy Belle Day, her father and mother; and she was seised of certain personal property and real estate. The real estate consisted of the north 60 feet of Lot 1, block 99, original town of Tulsa, Tulsa county, Okla., valued at $25,000, and the east one-half of southeast quarter of section 14, township 22, range 6 east, Pawnee county, Okla., valued at $8,500. The personal property in dispute consisted of the household goods and furnishings of an apartment erected upon real estate first above described.

It is further alleged that the described property was and is the individual and separate property of the deceased and acquired from her individual earnings and means; that J. F. Godfrey held the legal title to the same in trust for Bertha Godfrey, deceased, but that he contributed nothing to the purchase of the same, and, therefore, had no right nor title thereto; that the defendants (naming them) claimed some right or title to said property, but that such interest, if any, was inferior to plaintiff's; that J. F. Godfrey was on April 7, 1923,

convicted of the murder of Bertha Godfrey and sentenced to life imprisonment; that L. D. Day and Nancy Belle Day, father and mother, are the sole heirs of Bertha Godfrey, deceased, and entitled to inherit her estate; that defendants are in possession of said property and refuse to give plaintiff possession, and that the defendants are dissipating rents and profits and injuring the property in Tulsa.

Plaintiff prays for the appointment of a receiver, a judgment for the enforcement of a trust, declaring the property to be held in trust by J. F. Godfrey for the use and benefit of L. D. Day and Nancy Belle Day, for the determination of heirs, decreeing L. D. Day and Nancy Belle Day to be heirs at law and next of kin and decreeing them to be the owners of the equitable and legal title in the described property, and the quieting of title as against the defendants, and for "such other and further relief, be the same general, special, legal, or equitable, as the court may deem proper to decree."

A general demurrer was filed and overruled. Then O. L. Harmon and Mrs. O. L. Harmon answered, disclaiming interest in certain personal property, that is, personal effects and life insurance, and disclaiming as to the land in Pawnee county, but denying Bertha Godfrey, deceased, owned the furniture in the apartment situated on the real estate in Tulsa, and denied that the real estate was the separate property of the deceased, but alleged that J. F. Godfrey purchased the same from his own means and conveyed the same by warranty deed to L. G. Owens, Ed Crossland, John L. Ward, and W. A. Chase, who were innocent purchasers for value without notice of defects and purchasers upon faith of the record title. The answer admits possession of the Tulsa property by the answering defendants and claims title by purchase of an undivided one-half interest from L G. Owens, and alleges that answering defendants were also innocent purchasers without notice.

W. A. Chase and John L. Ward filed their separate answer, the same in effect as that of the Harmons. Plaintiff demurred to the answers, which demurrer was overruled by the court, whereupon the plaintiff filed a reply.

The evidence discloses that J. F. Godfrey employed Ed Crossland, W. A. Chase, L. G. Owens, and John L. Ward, defendants, as attorneys to defend him in his trial for murder and conveyed to them the real estate in controversy to secure their fee.

On trial the plaintiff insisted that the action was at law and urged the right to try the facts to a jury. The defendants argued that it was an equity case. The court impaneled a jury with the following interlocutory:

"The Court: The contention of the defendants is the property belonged to both the husband and the wife?

"Mr. Moss: That is right.

"The Court: Well, I will call a jury, gentlemen, and if it develops this is purely an equitable matter I will take it away from the jury and decide it myself." (C.-M., p. 33.)

At the close of plaintiff's evidence and at the time of the presentation of a demurrer to the testimony by defendants, the court discharged the jury upon the ground that the cause was in equity, and overruled the demurrer, and at the conclusion of the defendants' evidence the court found that the property in Pawnee county was no longer an issue, the same having been sold under a mortgage foreclosure; that the property, real and personal, in issue in Tulsa county was purchased, save and except the sum of $700, by funds of J. F. Godfrey, and that at the time the Tulsa real estate was deeded to J. F. Godfrey it was at the suggestion of Mrs. Godfrey, and that then she made the statement that after his death she would be the owner of the property; that all of the furniture was purchased by check on Godfrey's account in his own name and on his account by Mrs. Godfrey, and that J. F. Godfrey was the legal owner of both the real and personal property; that defendants were purchasers of the property for good and valuable consideration without notice, and that defendants are the owners of the property (except the defendants who disclaim). J. F. Godfrey then filed a disclaimer over the objection of plaintiff.

Motion for new trial was filed and overruled, and judgment was entered as follows:

"That on the 16th day of January, 1925, this cause came on for trial, Judge A. S. Wells, trial judge. Plaintiffs appeared, defendants appeared, except J. F. Godfrey who makes default, and the court ordered the said J. F. Godfrey in default. Plaintiffs begin their evidence, and it having come time to adjourn, the court adjourned until the 17th day of January, 1925. On the 17th day of January, 1925, the cause was resumed, plaintiffs having finished their evidence, rested and moved the court for judgment against the defendant J. F. Godfrey, which motion of the plaintiffs was granted;

the defendants then interposed a demurrer to plaintiffs' evidence, and the court having heard the argument, takes the matter under advisement until the 16th day of February, 1925 The cause resumed on said date, overruled the demurrer. The defendants, except J. F. Godfrey, then begin the introduction of their evidence, to the introduction of which plaintiffs then and there objected, the objection was overruled, and exceptions saved: and the defendants having completed their evidence, moved the court to vacate its judgment against J. F. Godfrey, which motion the court granted and vacated the judgment against Godfrey, to all of which plaintiffs objected and excepted; the court found that the money and funds advanced by Bertha Godfrey, which went into the purchase of the personal property and real estate set out and described in plaintiffs' petition, was a gift to the defendant J. F. Godfrey, and that at the time J. F. Godfrey took the life of his wife, Bertha Godfrey, the title to said property was vested in J. F. Godfrey, and that defendants Ed Crossland, W. A. Chase, L. G. Owen. O. L. Harmon, Mrs. O. L. Harmon, and John L. Ward became the purchasers of said property for a valuable consideration, without notice, and that said defendants became vested with the fee-simple title, and that the plaintiffs should be denied any relief. To which plaintiffs excepted, and exceptions allowed.

"It was therefore ordered that plaintiffs take nothing and that the defendants be granted the relief prayed for in their answers. * * *"

Before entering into a discussion of the law it may be further helpful to know more particularly the facts concerning the deeds and conveyances. On September 9, 1922, Bertha Godfrey was murdered. On September 15, 1922, a deed to the Tulsa property was executed by J. F. Godfrey then in jail charged with the murder. Ed Crossland, one of the defendants, testified that he was one of the grantees mentioned in the deed of September 15, 1922; that he saw Godfrey within an hour after the murder; that A. F. Moss and John L Ward were present, and that a fee was arranged to be paid to the two law firms represented by the gentlemen present—$5.000 to Moss & Owens, and $5,000 to Crossland, Ward & Chase; that Godfrey proposed to pay the fee by deeding the property; that at the time the deed was executed the grantor represented the property was worth more than the $10,000 fee, but that grantee found out the property was worth less than that and that a contract was necessary. A written contract was entered into whereby the grantor could redeem the property deeded within one year

upon the payment of the $10,000 fee. Mr. Owens, defendant, testified the contract recited the employment of the firms, Moss & Owens, and Crossland, Ward & Chase, for a fee of $10,000, and that grantees were to retain title for one year with the grantor's privilege of redemption. The contract of redemption was not in evidence, but evidence concerning it was adduced showing that within three weeks after its execution J. F. Godfrey voluntarily surrendered the contract. It was not shown to have been recorded.

In Biendorf v. Thorpe, 90 Okla. 191, 203 Pac. 475, it was held:

"Every instrument purporting to be an absolute or qualified conveyance of real estate, or an interest therein, but intended to be defeasible or as security for the payment of the money, shall be deemed a mortgage that must be recorded and foreclosed as such."

And:

"A deed absolute on its face, and a separate agreement executed on the same date as the deed wherein the grantee agrees to reconvey the same tract of land to the grantor, upon the payment of the consideration named in the deed with interest and taxes by a specified time, constitute together a mortgage. and under such instruments, the right of redemption is not waived." Kelley v. Leachman (Idaho) 29 Pac. 849; Calhoun v. Anderson (Kan.) 98 Pac. 274.

So, then, at the time of the delivery of the deed, the same constituted in fact a mortgage. At the time of the delivery of the mortgage represented by the deed the grantor only intended to pass title conditionally. McKinney v. Bluford, 81 Okla. 166, 197 Pac. 430.

In Krauss et ux. v. Potts et al. 38 Okla. 674, 135 Pac. 362, this court held that in accordance with section 5254, Compiled Oklahoma Statutes, 1921:

"Every instrument explanatory of any deed or other writing purporting to be a conveyance, but intended to be defeasible or as security for the payment of money, shall be deemed a part thereof and must be filed and recorded therewith. and unless such instruments are so filed and recorded together they and each of them shall have no other effect than an unrecorded mortgage, and the recording of the principal instrument shall secure no rights to the holder thereof."

It is urged under plaintiff's first contention that defendants failed to show by their answers any equities or that they were bona fide purchasers in good faith, and that the demurrer should have been sustained to the

answers. Plaintiff likewise objected to the introduction of evidence on the answers.

The answer, after pleading that J. F. Godfrey held legal title, was as follows:

"And that J. F. Godfrey, desiring to sell, assign, and transfer the above described property, made, executed, and delivered his warranty deed transferring the above described property, for a valuable consideration, to L. G. Owen, Ed Crossland, John L. Ward, and W. A. Chase, one-half of which property belonged to L. G. Owen, one-sixth to Ed Crossland, one-sixth to John L. Ward, one-sixth to W. A. Chase, and that the said grantees in said deed took said property without any knowledge or information, or anything that would lead them to believe or to take notice that Bertha Godfrey had or claimed any interest in and to the above-described real estate, and that the said grantees in the deed from J. F. Godfrey were innocent purchasers for value without notice of any claim whatever of Bertha Godfrey or her heirs, or any one else, and that said grantees bought said property upon the faith of the record title thereto."

No copy of defendants' deed is attached to the answer. The amount of consideration is not pleaded nor is it pleaded that they actually paid any consideration, nor are the facts pleaded that would show a valuable consideration or a bona fide one, nor was the pleading verified.

The essential pleading to show a bona fide purchaser is pointed out in Wright Blodgett Co. v. United States, 236 U. S. 397, 35 Sup. Ct. 339, 59 L. Ed. 637, as follows:

"In setting it up by plea or answer, it must state the deed of purchase, the date, parties and contents briefly; that the vendor was seised in fee, and in possession. The consideration must be stated, with a distinct averment that it was bona fide and truly paid, independently of the recital in the deed. Notice must be denied previous to, and down to the time of paying the money and the delivery of the deed; and if notice is specially charged, the denial must be of all circumstances referred to, from which notice can be inferred; and the answer or plea show how the grantor acquired title. * * * The title purchased must be apparently perfect, good at law, a vested estate in fee simple. * * * It must be by a regular conveyance; for the purchaser of an equitable title holds it subject to the equities upon it in the hands of the vendor, and has no better standing in a court of equity. * * * Such is the case which must be stated to give a defendant the benefit of an answer or plea of an innocent purchaser without notice; the case stated must be made out; evidence will not be permitted to be given or any other matter not set out."

Further exposition of the rule is had in Pomeroy's Equitable Jurisprudence, section 785:

"The allegations of the plea, or of the answer so far as it relates to this defense, must include all those particulars which, as has been shown, are necessary to constitute a bona fide purchase. It should state the consideration, which must appear from the averment to be 'valuable' within the meaning of the rules upon that subject, and should show that it has actually been paid, and not merely secured. It should also deny notice in the fullest and clearest manner, and this denial is necessary, whether notice is charged in the complaint or not. The denial must correspond with the settled rules upon the subject of notice, so as to bring the case within the operation of those rules. Concerning the foregoing averments there has been, and can be, no doubt."

The rule above announced obtains in Oklahoma.

In Gay et al. v. Williams, 219 Pac. 906, superseded by 102 Okla. 37, 226 Pac. 88, this court held:

"When the fraudulent character of the guardian's sales had been demonstrated, it was incumbent upon the mortgagee to make out a case disclosing a bona fide purchase for value without notice. The defense of bona fide purchaser for value without notice is an affirmative defense, and he who alleges it has the burden of proving it. In the case of Boone v. Chiles, 10 Pet. 177, 9 L. Ed. 386, the defense of a bona fide purchaser is defined:

"'In setting it up—a bona fide purchase without notice, by plea or answer—it must state the deed of purchase, the date, parties and contents briefly; that the vendor was seised in fee, and in possession; the consideration must be stated, with a distinct averment that it was bona fide and truly paid, independently of the recital in the deed. Notice must be denied previous to, and down to the time of paying the money and the delivery of the deed; and if notice is especially charged, the denial must be of all circumstances referred to, from which notice can be inferred; and the answer or plea must show how the grantor acquired title. The title purchased must be, apparently, good at law, a vested estate in fee simple. It must be a regular conveyance; for the purchaser of an equitable title holds it subject to the equities upon it in the hands of the vendor, and has no better standing in a court of equity. Such is the case which must be stated to give the defendant the benefit of an answer or plea of an innocent purchaser without notice; the case stated must be made out; evidence will not be permitted to be given of any other matter not set out.'"

Also, in McIntosh v. Holtgrave et al., 79 Okla. 63, 191 Pac. 739, Justice McNeill, in discussing the subject of an innocent purchaser, said:

"The defendants in error contend, however, the petition does not state a cause of action, for the reason that the parties are innocent purchasers, but that claim is not available at this time, nor can it be considered by the court at this time. If the defendants are innocent purchasers, it will be necessary for the defendants to plead and prove such fact. Such was the holding of this court in the case of Adams Oil & Gas Co. v. Hudson, 55 Okla. 386, 155 Pac. 220"

See, also, Scott et al. v. Woods Lumber Co., 86 Okla. 185, 207 Pac. 449, holding:

"They did not plead that they were bona fide purchasers, neither was their answer verified. To have the benefit of the law on innocent purchasers it must be pleaded. Bruce et al. v. Overton et al., 54 Okla. 350, 154 Pac. 340; Adams Oil & Gas Co. v. Hudson, 55 Okla. 386, 155 Pac. 220; Tucker v. Leonard et al., 76 Okla. 16, 183 Pac. 907; Mobley v. Rhoades et al., 77 Okla. 64, 186 Pac. 230; McIntosh v. Holtgrave et al., 79 Okla. 63, 191 Pac. 739."

In Bruce v. Overton, supra, it was held:

"A person seeking protection as an innocent purchaser of real estate without notice of an outstanding title must both allege and prove facts constituting him such innocent purchaser, and, unless he does so, that issue is not raised."

In the body of the opinion it is said:

"It is an affirmative defense, and the facts constituting the same are usually peculiarly within the knowledge of the person claiming to be an innocent purchaser. He knows whether or not the consideration was paid. and, if so, what it was, and whether he had knowledge of the outstanding title or notice of any fact that would tend to put him upon inquiry, and he is called upon to plead and prove such facts."

Notice of defects or prior claim after the agreement by which the deed was issued, but before any payment, will destroy the character of bona fide purchaser, and where a part only of the consideration has been paid before notice, the protection of innocent purchaser for value without notice runs pro tanto. Pomeroy's Eq. Juris., vol. 2. sec. 750. And there must be an actual payment —something more than a promise, bond, covenant, mortgage, or other nonnegotiable security, for the consideration—for upon failure of consideration he can be relieved from such obligation in order that the position of innocent purchaser for value without notice be established. Pomeroy's Eq. Juris., vol. 2, section 751.

We conclude that the demurrer of plaintiff to the answers of defendants should have been sustained in so far as was concerned a plea of bona fide purchaser for value, and that objection to the introduction of evidence as to this phase was good and improperly overruled.

The judgment of the court below is predicated upon the proposition that the money advanced by Bertha Godfrey, which went into the purchase of the property in dispute, was a gift to the defendant J. F. Godfrey.

The plaintiff's third proposition is a contention that the property in question is the individual property of the deceased.

The only evidence of record upon which the finding and judgment can be based regarding the gift of the property from the wife to the husband is that of Beulah Dahlem. This testimony was in response to a question:

"What was said on the occasion of making the deed from Dahlem to Godfrey for the lot on which the apartment is situated?"

"Q. State, Mrs. Dahlem, what else, if anything, was said there at the time this deed was in the process of making, or prior thereto?

"A. When I asked the question to whom the deed should be made, Mrs. Godfrey answered the question, 'Fred Godfrey'; and the rest of her statement was this: 'I know that his people will never get a cent of it while he is living.' That was her statement."

Based upon this testimony, the trial court found:

"The court further finds that the real property, at the time it was deeded to J. F. Godfrey, was deeded to him at the suggestion of Mrs. Godfrey, and that she made the statement at that time that after his death she would be the owner of the property."

The finding was in error, based upon a mistake as to what the testimony was. Mrs. Godfrey did not say that after her husband's death she would be the owner of the property; what she did say was that while her husband was living he would not permit his people to get the property. The exact evidence does not justify the finding that the deceased intended the property as a gift.

Where property is purchased by funds of the wife and title thereto is placed in the husband's name, a presumption arises that he holds it in trust for her. No such

presumption arises in favor of a husband where property is purchased by funds of the husband and title is placed in the wife; the presumption in such case is that it is a gift to her for her support, this upon the obligation of the husband to furnish the wife's support. The same latter rule applies to a child.

In Wright v. Wright, 242 Ill. 71, 89 N. E. 789, where an action was brought by Richard Wright against Elizabeth Wright, the wife of Ellis Wright, the father of Richard Wright, to have the dower and homestead of Elizabeth Wright assigned in certain lands of which Ellis Wright died seised— Ellis Wright bought an 80-acre tract of land with money belonging to his wife, taking title in his own name—the Illinois court said:

"Appellant contends that, to establish a resulting trust in this case, it must be proven by clear and convincing evidence, not only that appellee furnished the money and that the deed was taken in her husband's name, but also that the parties intended that a trust should be created at the time of the transaction. All the cases agree that where a man pays for land and causes it to be conveyed to his wife or child, the presumption is that it was intended as an advancement or gift. Reed v. Reed, 135 Ill. 482, 25 N. E. 1095; Pomeroy's Eq. Jur. sec. 1041. The inference which the law permits to be drawn in this class of cases is based upon the common knowledge and experience of mankind in regard to the motives that usually accompany transactions of that character. Where there is a legal obligation resting on the one furnishing the consideration to support the person in whose name the conveyance is taken, it is said in some of the cases that the law will infer an intention to make a gift or an advancement, and that, to establish a resulting trust, the transaction must be attended by circumstances that negative this inference, or, as it has sometimes been expressed though not with entire accuracy, by circumstances showing an intention to create a trust. The intention of the parties to create a resulting trust is not necessary to its existence. * * *

"No case is cited, and we have been unable to find any, which holds that, where the wife furnishes the purchase money and the deed is taken in the name of the husband, a presumption of a gift or an advancement arises. There is a clear intimation in Francis v Rhoades. 146 Ill. 635. 33 N. E. 232, and Madison v. Madison, 206 Ill. 534, 69 N. E. 625, that no such presumption exists. The reason upon which the presumption rests where the purchase money is furnished by one who is under a legal obligation to maintain the person in whose name the deed is taken does not apply where the wife furnished the consideration for a deed taken in the name of her husband."

Story on Equity Jurisprudence, section 1203, says:

"The moral obligation of a parent to provide for his children is the foundation of the exception, or rather of this rebutter to a presumption; since it is not only natural but reasonable in the highest degree, to presume that a parent, by purchasing in the name of a child, means a benefit for the latter, in discharge of this moral obligation, and also as a token of parental affection."

"This presumption in favor of a child, being thus founded in natural affection, and moral obligation, ought not to be frittered away by nice refinements."

Section 1204, Id.:

"And the like presumption exists in the case of a purchase by a husband in the name of his wife, and of securities taken in her name. Indeed, the presumption is stronger in the case of a wife than a child; for she cannot, at law, be the trustee of her husband."

In the case of Stickney v. Stickney, 131 U. S. 227, 33 L. Ed. 136, it is said:

"But we are of the opinion that, in the absence of her testimony, there would be no presumption, since the passage of the Married Woman's Act, that she intended to give to her husband the moneys she placed in his hands, any more than a gift would be inferred from a third person who in like manner deposited the money with him. If there be no proof of indebtedness to the party receiving the moneys, the presumption would naturally be that they were placed with him to be held subject to the order of the other party, or to be invested for the latter's benefit. We think that whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended it for a gift to him."

In Grabill v. Moyer, 45 Pa. 533, the Supreme Court of Pennsylvania held that all property, real, personal, or mixed, which shall accrue to any married woman during coverture, by will, descent, deed, or conveyance, or otherwise, shall be owned, used, and enjoyed by such married woman as her own separate property, and that it was impossible to declare that the mere possession of it by the husband is proof that the title has passed from the wife to him, and that where he obtains it with her consent it can be at most but slight evidence of a gift. Crawford v. Hurst et al., 299 Ill. 503, 132 N. E. 511; Hudson v. Wright, 204 Mo. 412,

103 S. W. 8; Reed v. Sperry, 193, Mo. 167, 91 S. W. 62; Heintz (Tex. Civ. App.) 120 S. W. 941; Garner v. Second Nat. Bank, 151 U. S. 420, 38 L. Ed. 218; Nettles v. Nettles, 67 Ala. 601; English v. Law, 27 Kan. 242; Mosteller v. Mosteller, 40 Kan. 658, 20 Pac. 464; Howard v. Howard, 52 Kan. 469, 34 Pac. 1114; Mendenhall et al. v. Walters et al., 53 Okla. 598, 157 Pac. 732.

In Mendenhall v. Walters et al., supra, this court squarely decided and adhered to' the doctrine of law heretofore stated. In that case the plaintiffs, as next of kin, secured a declaration of trust in the property as that of their sister, and where the legal title thereto had been taken in the name of the deceased sister's husband, John Walters. There it is stated:

"By section 6660, Rev. Laws 1910, it is enacted.:

" 'When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made.' See Helvie v. Hoover, 11 Okla. 687, 69 Pac. 958.

"The general rule in this regard, as applied to transactions involving money or property of the wife, is stated in section 1049, Pomeroy's Equity Jurisprudence, as follows:

" 'Another important form of trust arises from the acts of persons already possessing some fiduciary character or standing in some fiduciary relation. Whenever a trustee or other person in a fiduciary capacity, acting apparently within the scope of his powers, that is, having authority to do what he does —purchases property with trust funds, and takes the title thereto in his own name, without any declaration of trust, a trust arises with respect to such property in favor of the cestui que trust or other beneficiary. Equity regards such a purchase as made in trust for the person beneficially interested, independently of any imputation of fraud, and without requiring any proof of an intention to violate the existing fiduciary obligation, because it assumes that the purchaser intended to act in pursuance of his fiduciary duty and·not in violation of it. This doctrine is of wide application; it extends to trustees, executors, and administrators, directors of corporations, guardians, committee of lunatics, agents using money of their principals, partners using partnership funds, husbands purchasing property with money belonging to the separate estate of their wives, parents and children, and all persons who stand in fiduciary relations towards others. Equity jurisdiction contains few more efficient doctrines than this in maintaining the beneficial rights of property.' 1 Perry, Trusts, section 127; 39 Cyc. 138; English v. Law, 27 Kan. 242: Condit v. Biga-

low (N. J. Eq.) 54 Atl. 160; Mosteller et al. v. Mosteller, 40 Kan. 658; Loften v. Witboard, 92 Ill. 461; Mitchell v. Colglazier, 106 Ind. 464, 7 N. E. 199; Beddow v. Sheppard, 118 Ala. 474, 23 South. 662; Stickney v. Stickney, 131 U. S. 227, 9 Sup. Ct. 677: 33 L. Ed. 136; Wright v. Wright, 26 L. R. A. (N. S.) 161. note; Stonecipher v. Kear, 127 Am. St. Rep. p. 156, note."

We are bound, in reason, to follow the rule in the Mendenhall Case, and say in the absence of circumstances showing a contrary intention, where property is conveyed to a husband in consideration of money or assets furnished by or belonging to the wife, a trust results in favor of the wife with respect to such property.

Now, let us examine the evidence as to the circumstances and the cash or assets that went into the purchase of the property in controversy.

Judge Redmond S. Cole testified that as an attorney he examined the abstract to the Tulsa property for Mrs. Bertha Godfrey. That she and the grantor came to his office on three different times concerning the abstract.

Beulah Dahlem, grantor of the Tulsa property, testified that Mrs. Godfrey agreed to purchase the Tulsa lot from her, went to the bank with her, entered into an escrow agreement for the purchase, deposited $700 in escrow, and made out the deed as heretofore set out, and that "they" paid $4,800.

Flora Jones testified that her sister, Mrs. Godfrey, in her presence purchased the furniture and household goods for the Tulsa apartment and paid cash for the same; that J. F. Godfrey was not present at the time of purchase; that Mrs. Godfrey operated and managed the apartment and exercised control thereof; that prior thereto Mrs. Godfrey owned the Terminal Hotel in Tulsa and sold it.

Katherine Gilliam testified that she saw Mr. Godfrey about renting quarters in the apartment and that he said he had nothing to do with the renting, that Mrs. Godfrey attended to all that, and that it was not his and he had nothing to do with it; that she rented from Mrs. Godfrey and paid her the rent.

C. J. Lowe identified an account of Bertha Godfrey with the Sinclair Pipe Line Company from 1917 to 1922, for boarding employees, in the sum of $5,815.72.

An exhibit, No. 16, was admitted, which was an instrument bearing the names of J. F. Godfrey and Bertha Godfrey, directed to

the Oklahoma City Building & Loan Association and directing the deduction of $500 from the loan made and to pay the same to the Central National Bank of Tulsa, with the condition: "This order is given as security for a loan of $500 which I am procuring from said bank and which money I am using in the construction of a building at the corner of Second and Frisco." This is admitted to be the property in controversy.

Pearl Sheely testified that her sister, Mrs. Godfrey, at the time of her marriage with J. F. Godfrey owned as her individual property the furnishings and building of a restaurant business at Yale, Okla.

P. M. Skouby, assistant cashier of the First National Bank of Drumright from 1921 to May, 1923, and cashier from then to December 6, 1924, testified that Bertha Godfrey, on August 24, 1921, purchased a cashier's check payable to J. F. Godfrey in the sum of $2,400, and that on that date a check in the amount of $2,558.32, payable to Bertha Godfrey, came from the Bank of Mathews, Mathews, North Carolina; that Mr. Godfrey carried no account with them.

The evidence of record clearly shows that Bertha Godfrey purchased the property in Pawnee county. The record shows that J. F. Godfrey worked as a tank builder about 70 per cent. of the time; that he drank heavily and gambled away his money and made no effort to save any. No evidence traces any of Godfrey's money or assets into the purchase of the property in dispute. On the other hand, what money is traceable into the purchase of this property is that of Bertha Godfrey. In addition, she managed and controlled the property. Under these facts, it cannot be said that she had no interest in the property.

We have seen that Bertha Godfrey's money purchased the furnishings and fixtures of the apartment, and that all the money traceable into the original purchase price of the property was her money. She was frugal and possessed of good business tendencies, while, on the other hand, her husband was more or less shiftless and possessed of no means or assets. We have decided that the deceased controlled the property in question, but she permitted the legal title to be made in the name of her husband. We have followed the rule that where the wife furnishes the purchase money and the deed is taken in the name of the husband, no presumption of a gift or an advancement arises. We have held that a defense of innocent purchaser for value was

not properly pleaded. We may go a step further in determining, even if the innocent purchaser defense has been properly presented, whether it would have benefited the issue.

In Noe v. Smith, 67 Okla. 211, 169 Pac. 1108, this court held:

"When an instrument which clothes another with the indicia of title to property is used by him, the equities of innocent purchasers are protected. For where the true owner holds out another or allows him to appear as the owner of, or as having full power of disposition over, the property, and thus leads a third person to do what he would not otherwise have done, the owner will not then be allowed to subject such third person to loss or injury by disappointing the expectations upon which he acted."

In Simpson v. Drake, 90 Okla. 263, 217 Pac. 366, it is said:

"Where property is purchased by the husband with funds furnished by or belonging to his wife, a resulting trust will, as a general rule, be presumed to arise in favor of the wife; but such resulting trust arises only where it may be reasonably presumed to be the intention of the parties as determined from the facts and circumstances existing at the time of the transaction out of which the resulting trust is sought to be established."

There is no act shown to indicate that Mrs. Godfrey intended anything but a trust at the time of the transaction. At the making of the deed she paid her money. She bought the furnishings and managed the property. In arranging the purchase, in entering the escrow agreement, it was Mrs. Godfrey who was purchasing the property. The doctrine of resulting trusts is founded upon the presumed intention of the parties (39 Cyc. 105), and here the facts and circumstances indicate a resulting trust.

The murder case arose, as shown by the record, at a time when Mr. Godfrey was about to enter suit for a divorce. He was in consultation concerning the divorce with one of the attorneys of one of the firms who secured the deed to protect his fee in defending Godfrey in the murder charge. This grantee, Mr. Moss, must have known by reason of his relation, the property rights claimed, the number consituting the Godfrey family, and the fact that there were no children in the family. Another of the grantees, Ed Crossland, testified he was down at the Godfrey apartment immediately after the murder and knew there were no children.

Section 11301, Compiled Oklahoma Statutes, 1921, provides (subd. 2):

" * * *Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation."

Section 11319, Compiled Oklahoma Statutes, 1921, provides:

"No person who is convicted of having taken on or caused or procured another so to take the life of another, shall inherit from such person, or receive any interest in the estate of the decedent, or take by devise or legacy or descent or distribution, from him, or her, any portion of his, or her, estate; and no beneficiary of any policy of insurance or certificate of membership issued by any benevolent association or organization, payable upon the death or disability of any person, who in like manner takes or causes or procures to be taken, the life upon which such policy or certificate is issued, or causes or procures a disability of such person, shall take the proceeds of such policy or certificate; but in every instance mentioned in this section all benefits that would accrue to any person upon the death or disability of the person whose life is thus taken, or who is thus disabled, shall become subject to distribution among the other heirs of such deceased person according to the laws of descent and distribution, in case of death, and in case of disability, the benefits thereunder shall be paid to the disabled person. * * *"

Then, if this property be not considered the individual property of Bertha Godfrey, it must be considered to be at least community property, and being so considered, J. F. Godfrey could not inherit any of the wife's interest.

It would seem that murder of one's spouse, if known to the parties, would of itself be sufficient notice to place one under the duty of inquiring before dealing in the purchase of property from the surviving spouse, who at the time stood charged with the murder. In addition, J. A. Denny testified that he filed probate proceedings on the estate of Bertha Godfrey, deceased, on September 23, 1922, within 14 days of the murder, and hearing was had on October 12th; that on that day he informed Mr. Chase and Mr. Crossland that they were seeking to preserve Bertha Godfrey's estate and property. Thereafter a contract was made for attorneys' fees in this case, and the contract was placed on record giving record

notice to these defendants. The consideration of service on the part of the attorneys representing the defendant had not been paid at the time of the transfer, and even if a part performance had been had as a part consideration, the pleas of innocent purchasers would only have been good pro tanto. No such plea was properly made, notwithstanding actual notice under section 3538, Compiled Oklahoma Statutes, 1921.

In Lair v. Myers, 71 Okla. 175, 176 Pac. 225, it is said:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have notice of the fact itself." Winsted v. Shank et al., 68 Okla. 269, 173 Pac. 1041; Daniel v. Tolon et al., 53 Okla. 666, 157 Pac. 756.

No evidence was produced showing the contracted consideration of services in the amount of $10,000 was a reasonable one. Under the facts and circumstances, we think the defendants had such notice as to the character of the property at least as would place upon them the duty of making inquiry which would have led them to the fact. Such being the case, upon their failure to so act, their claim of innocent purchaser for value as pleaded is without merit.

The defendants in error contend that plaintiff did not state a cause of action and that their demurrer to the petition should have been sustained. It is true that plaintiff alleges in the petition that defendants are in possession and there is no specific prayer by plaintiff for possession. There is only a prayer for general relief. Defendants in error contend that an action to quiet title cannot be maintained without joining with the same an additional cause of action of ejectment.

This question is not squarely before us. Defendants below did not elect to stand on their demurrer when it was overruled. They do not bring a cross-appeal, even if they would be permitted to do so as a question of law, where no judgment was rendered against them. Section 466. Compiled Statutes. 1921. provides that an action may be brought for the purpose of determining an adverse estate or interest in real estate and joined with an action to recover possession of such real estate property, by any person not in possession.

This section of the statute is liberally construed in Koch v. Deere, 50 Okla. 783, 150 Pac. 1102. The plaintiff below, defendant in error, Deere, alleged in her peti-

tion that she was the legal and equitable owner of an allotment; that defendant below, plaintiff in error, obtained a purported warranty deed from her; that such deed was void, being in violation of a restriction imposed by Congress; that there was a lack of consideration; that said deed established a cloud upon her title; she prayed cancellation. There was no allegation that plaintiff was in possession. This court said, after reciting that the action was one to recover possession of real property and to quiet title, that:

"Under chapter 10, S. L. 1910-11, one not in possession of real property may bring an action for the possession thereof and to quiet title thereto by the cancellation of a deed which constituted a cloud thereon"

—and held that the petition stated a cause of action.

In the case at bar the plaintiff brings an action to quiet title, an equitable action, and joins therewith an action to determine heirs, an action at law. Should the latter action prevail, by the force of it the heirs would be entitled to possession, in the event the action in equity prevails. In such event title would descend to them and right of possession would be an incident to such title. The actions in law and in equity are properly joined. It may be that a motion to separately state and number the causes of action would have been proper. Such a motion was not presented. The prayer is no part of the petition. If plaintiff stated such allegation as would, if proved, entitle plaintiff to relief sought, the petition was good as against a demurrer. We think the petition presented such allegations of fact, and the causes of action being joined, the general prayer for relief was sufficient in view of the fact that the demurrer of defendants must be considered as waived by reason of their action in proceeding to the trial of the issues.

By reason of all the facts and circumstances heretofore set out, we think, and so decide, that the property in Tulsa in controversy was purchased by the funds of Bertha Godfrey, deceased, that her heirs were entitled to have declared and enforced a resulting trust in said property as the individual and separate property of Bertha Godfrey, deceased; that it is the duty of the Supreme Court, when the sufficiency of the evidence to support the findings of the trial court is challenged, to consider the whole record and to weigh all the evidence, and when the judgment of the trial court is clearly against the weight of the evidence, to render, or cause to be rendered such judg-

ment as should have been rendered in the trial court in cases of equitable cognizance. We hold the right to possession follows as an incident to the cause of action in equity, and we direct the court below to render judgment in accordance with the views herein expressed and the prayer of the petition.

BRANSON, C. J., and HARRISON, PHELPS, LESTER, and CLARK, JJ., concur.