## OKLAHOMA STATE BANK OF ADA v. COLE et al. (LIBERTY NAT. BANK OF OKLAHOMA CITY, Garnishee).

No. 23386. Nov. 27, 1934.

Rehearing Denied Dec. 18, 1934.

B. C. King and W. A. Delaney, Jr., for plaintiff in error.

Miley, Hoffman, Williams, France & Johnson, for defendants in error.

PER CURIAM. This is an appeal from a judgment of the district court of Pontotoc county in favor of the defendants in error, who were also defendants therein, and against the plaintiff in error, who was plaintiff therein.

In order to clearly understand the questions of law involved in this case, a brief statement of the facts is necessary.

The plaintiff, on May 20, 1931, recovered a judgment against the defendant Vera E. Cole upon a note dated April 3, 1930, and caused a garnishee summons to be issued to the Liberty National Bank of Oklahoma City on July 3, 1931. The bank answered that it held, among other items of personal property, certificate No. CO 10558 for 20 shares of

Oklahoma Gas & Electric Company 7 per cent. preferred stock, issued to Emma J. Reading and Vera E. Cole, as joint tenants, with right of survivorship and not as tenants in common. This certificate was dated April 17, 1926.

The evidence is uncontradicted that some three years prior to the issuance of this certificate, James E. Reading, the father of Vera E. Cole and the husband of Emma J. Reading, purchased 20 shares of 7 per cent. preferred stock of the Oklahoma Gas & Electric Company, and a certificate evidencing such purchase had been issued to James E. Reading and Vera E. Cole, as joint tenants, with right of survivorship, and not as tenants in common; that thereafter, and on March 29, 1926, the said James E. Reading died, and that on April 17, 1926, said certificate so issued to James E. Reading and Vera E. Cole was surrendered by Vera E. Cole to the Oklahoma Gas & Electric Company, and in lieu thereof certificate No. CO 10558, as above stated, was issued.

Vera E. Cole testified that her father purchased this stock; that she did not pay anything for the stock, and that it was understood that the stock was to be her mother's when her father died, and that it was taken in the manner it was so that in case anything happened to her father, it would not have to go through court.

The evidence further shows that on April 13, 1926, the following "Dividend Order" was executed and delivered:

"Dividend Dept.

"Dividend Order.

"To the Oklahoma Gas and Electric Company

"Please pay, by check on New York, to the order of Mrs. Emma J. Reading, Route No. 7, Box 108, Oklahoma City, Oklahoma, for my account by mail to the following post office address:

"Mrs Emma J. Reading,
"Route No. 6, Box 108, Oklahoma City, Oklahoma.

all dividends due, and which may hereafter become due, on all shares of the capital stock of the above company, now standing, and which may hereafter stand of record in my name on the books of the said company, until you receive a written revocation of this order, signed by me, or in case of my death, by my legal representatives.

"30 sh. Mrs. Vera E. Cole and Mrs. Emma J. Reading,

"20 sh. Mrs. Emma J. Reading and Mrs. Vera E. Cole, Okla. Gas and Electric Co. Pfd. Stock.

"Dated at April 13, 1926.
"(Signed)
"Mrs. Vera E. Cole
"46 and Sheilds South

"Mrs. Emma J. Reading
"Mr N. C. McBath
"Signature Guaranteed
"%Okla. Gas & Elec. Co. Oklahoma City."

Vera E. Cole further testified that she had never received one penny of dividends from the stock; that all dividends were being paid to her mother.

The only evidence offered on behalf of the bank tending to prove ownership of this stock in Vera E. Cole was the fact that she had put up this particular certificate as collateral to a loan she had at the bank. However, the evidence is somewhat conflicting as to whether Vera E. Cole used this particular certificate as collateral to the plaintiff upon some other note. Mr. H. P. Rich, vice president of the bank, testified that Mrs. Cole put up some Oklahoma Gas & Electric Company stock as collateral to a note other than the one sued upon in this action, but that he did not know whether it was a $2,000 certificate, or a $3,000 certificate.

Mr. C. H. Rives, the president of the bank, testified positively that the certificate Mrs. Cole put up as collateral was a $2,000 certificate; that he inspected it and O. K.'d it; that it was for 20 shares and not for 30 shares; that he made no record of it, except on the note Mrs. Cole signed and later paid. Mrs. Cole later produced the note, and indorsed on the back of the note were these words:

"Certificate No. CO 10559 for 30 shares Okla. Gas & Electric Co. Stock Enclosed as Security."

Mrs Cole testified that her mother lent her this certificate of stock to be used as collateral, and that she never put up any other certificate representing shares of stock in the Oklahoma Gas & Electric Company as collateral with the plaintiff bank.

Under this testimony, there is no doubt that Mr. Rives was in error as to what certificate of stock was used by Mrs. Cole as collateral.

The only evidence other than the fact that the certificate was actually issued in the joint name of Mrs. Emma J. Reading and Mrs. Vera E. Cole was that the certificate was found in the lock box taken in the name of

Vera E. Cole. It was established by the evidence that this lock box was used as a family box, and that there were a great number of articles found therein belonging to Mrs. Reading. It was further shown that Mrs. Cole looked after her mother's business affairs after her father's death.

It is plaintiff's contention that oral testimony was inadmissible to prove ownership of the stock in question, and it cites section 9745, O. S. 1931, which reads as follows:

"9745. Issue and Transfer of Stock. All corporations for profit must issue certificates of stock when fully paid up, signed by the president and secretary. Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property and may be transferred by indorsement by the signature of the proprietor, or his attorney, or legal representatives, and delivery of the certificate; but such transfer is not valid except between the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties by and to whom transferred, the number or designation of the shares, and the date of the transfer."

This statute has no application to this case. There is no transfer of stock involved. Mrs. Cole says that she does not own the stock and never has owned it; that she is simply holding it in her name for convenience; that her father originally paid for it, and it was to go to her mother; that her mother has been receiving all the dividends since 1926.

That ownership may be proved by oral evidence is stated clearly by Christy in his work on "The Transfer of Stock," page 20, where he says:

" 'Stock is one thing, and certificates another. The former is the substance, and the latter is the evidence of it.' Stock may be created even though no certificates are issued, but stock would be of little value to a holder unless he had a certificate as evidence of his ownership of which he could readily dispose. Hence, it is provided by statute practically everywhere that the holder of stock in a corporation is entitled to a certificate.

"The certificate is prima facie evidence of title to the stock represented thereby. But the fact that the certificate stands in the name of a certain person does not prevent an inquiry into the facts to determine whether that person is the real or only a nominal owner of the stock."

In the case of Swan v. Swan's Executor (Va.) 117 S. E. 858, cited by Christy in support of the text, it was held:

"But it is quite possible, and often happens for reasons of convenience or otherwise, that stock held in the name of one person really belongs to another. In such a case the certificate, though prima facie evidence of ownership in the person to whom it has been issued, possesses no such magic or sacredness as to prevent an inquiry into the facts. Sometimes the transferee is merely a nominal holder or 'dummy,' and in that event, although the transfer may be perfectly regular, and complete on its face, the true ownership remains in the transferor, and that fact may be shown. 1 Cook on Corporations (4th Ed.) sec. 263; Id. sec. 421."

Plaintiff in error does not quote the evidence which it says the court erred in admitting. Rule 10 of the Supreme Court, adopted March 1, 1933, is as follows:

"Where a party complains of the admission or rejection of testimony, he shall set out in his brief the testimony to the admission or rejection of which he complains, stating specifically his objections thereto."

This court, in Mercantile Trust Co. v. Roland, 143 Okla. 190, 288 P. 300, in passing upon Rule 26, which was replaced by the Revision (Rule 10), said:

"No citation of authority is presented in support of the argument, nor is the testimony specifically set forth or the objection made thereto at the time of its admission set out. * * *

"In order to have reviewed on appeal alleged errors in the admission of evidence, it is essential that the party complaining thereof comply with rule 26 of this court relating thereto."

The facts disclosed by the testimony in this case tend to create a resulting trust in Vera E. Cole.

"Where property is purchased by the husband with funds furnished by, or belonging to, his wife, a resulting trust will, as a general rule, be presumed to arise in favor of the wife; but such resulting trust arises only where it may be reasonably presumed to be the intention of the parties, as determined from the facts and circumstances existing at the time of the transaction out of which the resulting trust is sought to be established." Simpson v. Drake, 90 Okla. 263, 217 P. 366.

"A resulting trust may be established by parol evidence; however, the law requires that the proof necessary to establish it should be clear, satisfactory and convincing." Craig v. Craig, 114 Okla. 302, 247 P. 67.

We think Vera E. Cole has met this bur-

den. This stock was originally issued to her father and her, with right of survivorship. After her father's death, she did not assert any ownership by reason of her rights as survivor, but had the stock reissued in her mother's name and in her own name pursuant to instructions theretofore given her by her father. Since having that done in 1926, she has never exercised any rights of ownership.

For the reason given, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys J. I. Pitchford, Leon C. Phillips, and L. L. Cowley in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts prepared by Mr. Pitchford, and approved by Mr. Phillips and Mr. Cowley, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.