**NAEDELEN et al. v. WAGNER et al.**

No. 21203. Opinion Filed July 27, 1932.

Rehearing Denied Nov. 1, 1932.

Erwin & Erwin, for plaintiffs in error.

Emery A. Foster, for defendants in error.

KORNEGAY, J. This suit started in the district court of Lincoln county by the filing of a petition on the 3rd of January, 1929, with a statement therein that there is no adequate remedy at law. Plaintiff relies on a contract made by the deceased, Etta Wagner, and her husband, that was oral, with the mother of plaintiff, Gracia Preston, and Mrs. I. W. Rush, "who then had the care and custody of plaintiff for the purpose of finding him a home. That plaintiff had been abandoned by his father and left by his mother with Mrs. I. W. Rush under an agreement that Mrs. I. W. Rush should find plaintiff a good home."

There were other allegations upon that line, and the prayer was for the court to decree plaintiff an heir of Etta Wagner, deceased, and "entitled to a child's part of said estate according to law and that plaintiff be decreed to be an owner of an undivided one-half interest in and to the southeast quarter ($\frac{1}{4}$) of section nine (9), township sixteen (16), north of range four (4), east I. M., Lincoln county, state of Oklahoma, and to a one-half interest in and to any other property of which Etta Wagner died seized in law or in equity, and that the said defendants Mrs. Minnie Naedelen and Gertrude Buikema or either of them be decreed to take nothing by reason of their relation to Etta Wagner, deceased, and that the plaintiff and F. E. Wagner be decreed and declared to be the sole and only heirs of Etta Wagner, deceased. And for such other relief as plaintiff may in law or equity be entitled."

After publication the plaintiffs in error, who were sisters of Etta Wagner, the deceased, appeared and demurred to the petition, but it was overruled, and they filed an answer and the defendant F. E. Wagner filed an answer, as follows:

"That defendant admits the allegations of plaintiff's petition and states that this defendant F. E. Wagner and Etta Wagner, his wife, took the plaintiff under an agreement to make him their heir and raise him as their child, all as alleged in the petition of plaintiff, and this defendant asks that the court render such judgment in the matter as may be legal, just and equitable."

The answer of the sisters of the deceased denied the agreement to adopt or to make the plaintiff an heir, and stated that the father of the plaintiff never released his right to the care and custody of the plaintiff, and would not consent that the deceased and her husband have the care and custody of the child, averring that any contract made by any other person would be illegal and void and without consideration.

The averment was made in the answer that the mother made no such contract, and that she was incapable of making such contract, by reason of insanity, and that the object of the aunt was merely to obtain a home for

him and relieve herself from the expense of rearing him. There was a further averment that the property that the plaintiff sought to get the court to decree him had come from a relative of the deceased, and complaint was made of the collusion of the defendant F. E. Wagner and the plaintiff. Further averment was made of a relinquishment by the plaintiff of any claim he might have had, and of his waiting ten years after reaching his majority without any suit against the defendant Wagner for breach of the contract of adopting, and that he had allowed more than three years to elapse after the death of the deceased before commencing any action to enforce any liability upon the contract to adopt.

In the petition there was further averment that the deceased had continued to treat the plaintiff as her child until her death, but that Etta Wagner had inadvertently failed and neglected to perform the contract she made with the mother of the plaintiff and Mrs. I. W. Rush, in not providing that the plaintiff have her property by will or otherwise. There was an averment of faithful performance by the plaintiff of the contract, and that the mother of plaintiff and Mrs. Rush performed all the conditions precedent on their part. Evidently the petition was framed after the manner of the facts set forth in the case of Eggstaff, Adm'x, v. Phelps, 99 Okla. 54, 226 P. 82. A general denial was made by way of reply.

The case was tried by the court, and objection was made to the introduction of any proof by the present plaintiffs in error for the lack of facts set forth in the petition to make a cause of action, and by reason of the statute of limitations, upon the ground that ten years had elapsed since the plaintiff became of age. The main witness relied upon to establish the allegations of the petition was Edith Van Winkle, who stated that the mother of the plaintiff brought plaintiff to Oklahoma from Kansas for her sister to take care of him, and her sister was not able to take care of him, and that the mother of the witness and witness took care of him with the intention of keeping him, until they could get him a good home, and the mother asked her to do that, and the father deserted the mother and the children when the plaintiff was two years old, and that Mr. Wagner came and wanted to take him, and that in trying to find a home for him she and her parents kept the child about three months, and that she met the deceased, Etta Wagner, and her husband at Stroud in October after the child was three years old in

August. Her description of the agreement was:

"She said they would take the boy and raise him as their own and adopt him, and of course they would make him their heir."

She did not know what became of the father, but heard that he died, and nobody ever claimed the child, and the child went by the name of Wagner and was now married, and that Mrs. Wagner came at different times to see if she could find his mother or his father so she could get adoption papers for him. With reference to the mother, she says:

"Q. Now, the reason that they did not adopt the child at that time was because you could not find the mother or the father; is that your testimony? A. We did not, no —we did not find the father and the mother, and I don't know whether they could find her or not—we could not."

She stated she never saw the mother after the child was turned over to deceased, and there was no written agreement.

F. E. Wagner, one of the defendants, testified, over objections. At page 66, detailing his method in getting hold of the child, the conversation being had between his wife and the people who had the child, his testimony was:

"A. Well, I heard her say that she would take the child and raise it as her own as though he was her own child, educate him, give him a home, and take this child in her home, care for him and raise him, adopt him and make him her heir. Now, that is just what she said. Q. To this woman Van Winkle? A. Yes. Q. What did the Van Winkle woman say? A. Well, she agreed and consented to it and let us take him. Q. Did you consent to that arrangement? A. I did, or I never objected to it. My wife told me just before she went just before we went just what she expected to do, etc."

It appears that after the child came to Wagner's house, he remained there and the Wagners did a very good part by him in the way of sending him to school, and that he married when he was 21 or 22, and lived on part of the farm that they had. It further appears that the deceased died in Chicago at the home of her sister, and that later the sister presented a bill to Wagner for taking care of her during her sickness, and it was rejected, and that suit was brought on it, and a judgment was rendered requiring him to pay it, and an appeal was taken to this court. It also developed that several children had been taken into the home of Wagner and his wife in about the same manner as the plaintiff,

and were treated the same as the plaintiff, some leaving early and some staying longer.

The history of the property of the deceased was recited. It appears that she was a very active woman, and had some spirit of enterprise, and that she joined her husband in buying a farm, and later she inherited the money from a relative in Holland used to buy the land that is now sought by the plaintiff in error. A finding of the court in the judgment entry is as follows:

"That the plaintiff, Orville Wagner, was taken into the home of F. E. Wagner and Etta Wagner sometime in the year 1898; that he was taken or delivered to the Wagners by Mrs. Iva Rush; that the said Orville Wagner was left at the home of the said Iva Rush by the mother of the said Orville Wagner, and that the said Iva Rush received said child from his mother, Georgia Preston; that at the time of the reception of said child that the mother agreed that said Iva Rush should place him in some suitable home where he would be kept and cared for; that in pursuance of said agreement the child was taken to the Wagners and placed in their home and kept there until he became about the age of 22 years, at which time he married; that they treated him as their son, and that he treated them as a child should treat a parent and the relation of parent and child existed between the said Orville Wagner and his mother and father, F. E. Wagner and Etta Wagner.

"The court therefore concludes as a proposition of law that said child was adopted by the said F. E. Wagner and Etta Wagner to all intents and purposes and became their child, and that under the law of this state he is entitled to inherit the same as if legally adopted by the said Wagners, and is therefore an heir to the estate of the said Etta Wagner, deceased, and entitled to share equally with the husband of the said Etta Wagner.

"Thereupon the attorneys for the last two named defendants request that the court make a finding as to whose money purchased the farm, Etta Wagner's or F. E. Wagner's money; and the court thereupon at such request for a finding as to the source of the funds from which the land which Etta Wagner died seized of was derived, finds that the funds with which this property was purchased, came by a will from an ancestor in Holland of Etta Wagner, and that Etta Wagner and F. E. Wagner used the land in common and some improvements were placed upon the property by F. E. Wagner."

To reverse that finding and decree, this proceeding in error is brought. We think the matter is regulated and controlled by our statute. The statute on the subject of adoption appears to be plain. It is article 2, chapter 70, C. O. S. 1921. Section 8043 [O. S. 1931, sec 1701] is as follows:

"8043. Adoption of Minor Child. Any minor child may be adopted by any adult person, in the cases, and subject to the rules prescribed in this article."

Sections 8045, 8046, 8047, 8048, 8049, 8050, 8051, 8052, 8053, 8054, and 8056, C. O. S. 1921, [O. S. 1931, secs. 1703-1714] are as follows:

"8045. Mutual Consent of Husband and Wife Necessary. A married man not lawfully separated from his wife, cannot adopt a child without the consent of his wife, nor can a married woman not thus separated from her husband, without his consent, provided the husband or wife not consenting is capable of giving consent.

"8046. Consent of Parents—When Necessary. A legitimate child cannot be adopted without the consent of its parents, if living, nor an illegitimate child without the consent of its mother, if living, except that consent is not necessary from a father or mother deprived of civil rights or adjudged guilty of adultery, or of cruelty, and for either cause divorced or adjudged to be an habitual drunkard, or who has been judiciously deprived of the custody of the child, on account of cruelty or neglect.

"8047. Consent of Child. If the child is of the age of twelve years or upwards, the adoption shall not be made without its consent.

"8048. Petition for Adoption. Any resident of this state may petition the county court of the county in which he resides, for leave to adopt a child not his own, and, if desired, for a change of the child's name; but the prayer of such petition by a person having a husband or wife shall not be granted unless such husband or wife joins therein, and when they so join, the adoption shall be by them jointly.

"8049. What Petition Shall State. The petition shall state the name, sex and age of the child sought to be adopted, and, if it is desired to change the name, the new name, the name and residence of the parents of the child, if known to the petitioner, and of the guardian, if any, and whether the parents or the survivor of them, or the guardian, if any, consents to such adoption.

"8050. Proceedings — Appearance and Agreement. The person adopting a child, and the child adopted and the other persons whose consent is necessary, must appear before the county judge of the county where the person adopting resides, and the necessary consent must thereupon be signed, and an agreement be executed by the person adopting, to the effect that the child shall be adopted and treated in all respects as his own lawful child should be treated.

"8051. Same—Hearing. The county

judge must examine all persons appearing before him pursuant to the last section, each separately, and if satisfied that the interests of the child will be promoted by the adoption, he must make an order declaring that the child shall thenceforth be regarded and treated in all respects as the child of the person adopting.

"8052. Decree—When to Issue. If the court is satisfied that the parents of the child or the survivor of them has deserted his or her family, or such child, for the space of one year next preceding the application, or if neither is living, the guardian, or if there is no guardian, the next of kin in this state capable of giving consent, has notice of the presentation of the petition and consents to such adoption, or that such child has no father or mother living, and no next of kin living in this state capable of giving consent, or is a foundling, and that the facts stated in the petition are true, and that the petitioner is of sufficient ability to bring up the child and furnish suitable nurture and education, and that it is fit and proper that such adoption should be made, a decree shall be made setting forth the facts and ordering that from the date of the decree the child shall, to all legal intents and purposes, be the child of the petitioner or petitioners, and may decree that the name of the child be changed according to the prayer of the petition.

"8053. Change of Name and Status. A child, when adopted, may take the family name of the person adopting. After adoption, the two shall sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation.

"8054. Rights of Adopted Children. A child so adopted shall be deemed, for the purposes of inheritance by such child, and his descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation. * * *

"8056. Decree Dissolves Legal Relations with Natural Parents. The natural parents of a child so adopted shall be deprived, by the decree, of all legal rights as respects the child, and the child shall be freed from all obligations of maintenance and obedience as respects such parents."

Tested by these rules, there was no adoption. The law of succession of this state is plain and is section 11301, C. O. S. 1921 [O. S. 1931, sec. 1617], and the second subdivision is as follows:

"Second. If the decedent leave no issue, the estate goes one-half to the surviving husband or wife, and the remaining one-half to the decedent's father or mother, or, if he leave both father and mother, to them in equal shares; but if there be no father or mother, then said remaining one-half goes, in equal shares, to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation. If decedent leave no issue, nor husband nor wife, the estate must go to the father or mother, or if he leave both father and mother, to them in equal shares: Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation."

Tested by these rules, the property in this case belonged one-half to the plaintiffs in error, and the decree in the case undertaking to divert it from them appears to be erroneous.

Under the proceedings that we had in the Indian Territory prior to statehood, there was such a thing as making a person an heir (Mansfield's Digest, secs. 2544, 2545) by a declaration in writing by the execution and the recording and acknowledgment of the same. As applied to the method here pursued, we think that to encourage it would not only violate the plain letter of the statute, but would also destroy the law on the subject of succession, as we find it, and encourage a breaking down of the statutes of "Frauds and Perjuries."

For years the privilege was before the parties to have adopted the plaintiff, and it was not done. So far as the filial regard is concerned, it does not appear that very much attention was thought of it after the plaintiff got away from home, and especially in the months preceding her death in Chicago, February 18, 1926, when having a home of his own the intestate was left to the care of her sisters in Chicago during the long sickness preceding her death.

We are not unmindful of the decisions that are relied upon in this case of Eggstaff v. Phelps, cited above, and followed in allegation, but departed from in proof, and Robinson v. Haynes, 147 Okla. 95, 294 P. 803, that have been announced by this court. We think the doctrine there announced should not be extended, and that in its most liberal extension therein made

it would not be broad enough to reach this case. Where the statutes have regulated the matter in plain terms, the courts have no right to break the provisions down by virtue of taking loose expressions here and there in court pronouncements and using them as levers for displacing the statutes, enacted and controlling, and we do not find that those cases or the statutes would warrant our sustaining the judgment below.

As a proposition of an agreement to devise for services, there are none of the elements in proof ordinarily accompanying such a claim. As to a quantum meruit, that does not appear. It does appear, however, that the plaintiff has been treated very well and given educational opportunities above the average. Ordinarily the child who has had such advantages will not repay the parent, and there is no proof here to warrant a finding based on pecuniary rewards for services rendered.

As it appears that the facts are such that on another trial there would be nothing to change the result, the case is reversed, with directions to enter judgment in favor of plaintiffs in error and for all costs of appeal and in the court below.

LESTER, C. J., and HEFNER, CULLISON, and SWINDALL, JJ., concur. CLARK, V. C. J., and RILEY, ANDREWS, and McNEILL, JJ., absent.