In 1894, Etta Wagner, who was then about 35 years of age, married F.E. Wagner and moved to Oklahoma. They homesteaded the southwest quarter (S.W. 1/4) of section ten (10), township sixteen (16) north, range ten (10) east, which is referred to hereafter as Farm No. 1. The patent therefor was issued to F.E. Wagner.
Later, on May 29, 1903, Etta Wagner, as grantee, acquired by warranty deed the southwest quarter (S.W. 1/4) of section nine (9), township sixteen (16) north, range ten (10) east, which is referred to hereafter as Farm No. 2, for $3,200, paid from her separate estate. They were childness and lived through the years on Farm No. 1. On the 10th day of November, 1908, Etta Wagner opened an account in the bank of Agra and maintained the account continuously until her death. In July, 1925, she went to Chicago to visit her sister, suffered a stroke, and remained there until her death, which occurred February 18, 1926.
Administration proceedings were had upon her estate in the county court of Lincoln county. F.E. Wagner, her husband, was appointed and qualified as administrator on July 5, 1927. He filed his final account February 23, 1933, in which he charged himself with Farm No. 2, the balance in the Etta Wagner account in the Bank of Agra amounting to $770.79, and income from Farm No. 2 in the nature of crops and oil rentals amounting to $2,054.44. He credited himself with items of expense in the nature of repairs, taxes, insurance, and maintenance on Farm No. 2, amounting to $1,490.49, the amount of a judgment recovered by a deceased sister of Etta Wagner of whom the appellant is the sole legatee, for the care of Etta Wagner in her last illness $605, funeral expense $473, attorney's fee $25, court costs *Page 386 
advanced $10, showing a balance on hand of $221.74.
Gertrude Buikema, half sister of Etta Wagner, sole legatee of a deceased sister of Etta Wagner, being the nearest of kin of Etta Wagner, filed objections on the hearing of the final account which will be taken up hereafter. The county judge approved the final account, overruling the objections of Gertrude Buikema, decreeing Farm No. 2 and the income derived therefrom, totaling $2,054.44, and the sum of $74.10, condemnation money from a right of way thereon, to be assets of the separate estate of Etta Wagner to be distributed equally between F.E. Wagner and Gertrude Buikema, decreeing the bank balance of $770.79, the proceeds from the sale of government bonds amounting to $200, and one government bond amounting to $100 to be property acquired by joint industry, and distributed the same to F.E. Wagner. The county judge also allowed the credits shown by the administrator in his final report, an attorney's fee of $500, and an administrator's fee of $228.75. Gertrude Buikema appealed to the district court of Lincoln county, and that court affirmed the judgment of the county court. Gertrude Buikema appeals.
The first contention of the appellant is that the trial court erred in overruling her objections to the competency of the witness F.E. Wagner. She contends that his testimony was in respect to communications and transactions with his deceased wife and that he was, therefore, an incompetent witness under the provisions of section 271, O. S. 1931. A careful check of his testimony shows that it was confined entirely to transactions relating to Farm No. 2. The trial court sustained appellant's contention that this Farm No. 2 was not property acquired by joint industry. The appeal of F.E. Wagner from this judgment has been dismissed. Wagner v. Buikema, 168 Okla. 214,32 P.2d 707. The question as to the manner of distribution of Farm No. 2 has become moot. Town of Covington et al. v. Coberly, 136 Okla. 20, 275 P. 1064. The error, if any, was harmless. Security National Bank of Oklahoma City v. Martin,113 Okla. 295, 241 P. 812.
Appellant next contends that the trial court erred in overruling her motion to remove F.E. Wagner as administrator and appoint appellant as administratrix. She asserts that he individually claimed certain property which belonged to the estate and this adverse claim rendered him incompetent to remain as administrator. In administration proceedings it is the duty of the county court to see that all the assets of the decedent are properly accounted for by the administrator. For that purpose, evidence that property has not been accounted for is admissible in a hearing on the final account of the administrator, but a mere allegation or contention is not sufficient justification in itself to cause the removal or suspension of the administrator, and while the county court cannot try the title to real or personal property, it is within its jurisdiction to hear testimony on the question of whether title to the property claimed by the administrator in his individual capacity is vested in the estate of the decedent, and if it finds the contention groundless, it may settle the account and distribute the estate without removing the administrator. To hold otherwise would place it within the power of any heir, by making allegations without any merit to them, to bring about the removal of an administrator who had been faithful to his trust and to burden the estate with prosecuting groundless suits.
If, however, the county court determines that there are reasonable grounds to support the contention that the administrator in his own right claims property which is vested in the estate, it is the duty of the county court to give the administrator an opportunity to account for this property and on his failure so to do, to remove or suspend him and appoint someone else who will prosecute an action for the recovery of the property in a proper court where a trial by jury can, if demanded, be obtained. In re Kelly's Estate, 132 Okla. 21,269 P. 282.
We shall next determine the contentions made by appellant as to the various items in the final accounting.
First Item. Etta Wagner and F.E. Wagner executed an oil and gas lease on Farm No. 2 on December 15, 1925, for a bonus of $1,600. This bonus was deposited by Orville Wagner, who styled himself the son of F.E. Wagner, in the account of F.E. Wagner in the Bank of Agra on January 21, 1926. This was some few weeks before the death of Etta Wagner. The record does not show that she, by word or action, agreed to this transaction. The trial court held that Farm No. 2 was not acquired by joint industry, but was the separate estate of Etta Wagner.
In Re Pierce's Estate, 161 Okla. 94, 17 P.2d 411, the Court said in the syllabus:
"Where a widower owns real estate, leased for gas with production thereon, and he *Page 387 
thereafter marries, the income received from the gas produced on said land after his second marriage is not property acquired during coverture with said spouse, because said property was in existence prior to said second marriage, and the second wife in no way aided in procuring said money."
If income from an oil and gas lease is not properly acquired during coverture within the facts stated in the above case, it follows that a bonus from the sale of an oil and gas lease upon the wife's separate estate is not property acquired by joint industry within the meaning of subdivision 2, section 1617, O. S. 1931. Since there is no proof that Etta Wagner, by word or deed, either made a gift of or for a consideration transferred this $1,600 to F.E. Wagner, the contention of the appellant should have been sustained. The trial court should have given F.E. Wagner an opportunity to account for this item as an asset of Etta Wagner's separate estate, and on his failure so to do should have removed or suspended him as administrator and appointed a suitable person as his substitute for the purpose of bringing suit to recover this item in a court of competent jurisdiction.
Second Item. Appellant contends that Etta Wagner furnished $1,300 of the purchase price of Farm No. 1, which the trial court found to be the property of F.E. Wagner, and for that reason she contends that either her separate estate is entitled to have a resulting trust decreed for this amount or that she is entitled to have this farm decreed to be an asset of Etta Wagner's separate estate. She cites cases to the effect that where a wife furnishes the money from her separate estate with which to purchase property, the title to which stands in the name of the husband, a presumption is created that a resulting trust arises. Mendenhall v. Walters, 53 Okla. 598, 157 P. 732; Exchange Trust Co. v. Godfrey, 128 Okla. 108, 261 P. 197. But this is only a presumption. The evidence that Etta Wagner furnished the consideration for the purchase of Farm No. 1 is based upon the supposition that, since she probably had this sum when she married F.E. Wagner, it was used for this purpose. This transaction took place 34 years before her death, during all of which time she had lived with her husband. It is not shown that she ever made objection to the fact that he owned this farm. A wife may make a valid gift to her husband or they could have adjusted the matter during their married life. For 34 years she was satisfied for him to be the owner of the farm. The trial court found that he was the owner of the farm and that it should not have been included in the administrator's accounts. We believe the evidence was sufficient to justify this holding.
Third Item. It appears that in 1917 an oil and gas lease was executed on parts of Farm No. 1 and Farm No. 2, for which a bonus of $840 was received and which was deposited in F.E. Wagner's account. Appellant contends that he should account for that portion of the bonus which represents Farm No. 2. The trial court found otherwise. What we have said concerning Item Two applies with equal force here. The trial court heard the evidence and we shall not disturb its findings on this item.
Fourth Item. Orville Wagner withdrew from the account of Etta Wagner $500, which he sent by draft to the appellee, F.E. Wagner, on November 19, 1925. Appellant contends that this should be accounted for. The trial court found otherwise. There was sufficient evidence to support the trial court's ruling on this matter and, furthermore, this account of Etta Wagner from which this withdrawal was made was held to be property acquired by joint industry which was distributed to appellee. It is not necessary to require this money to be accounted for and then distributed to the appellee. The result is the same.
Fifth Item. We shall dispose of two items under this head. Appellant contends that appellee should have accounted for the sum of $748.08, being one-half of the proceeds of the sale of some personal property which was sold in December, 1925. There is no evidence that the title to any of this property was ever vested in the decedent. Appellant assumes that the title to this property was vested in F.E. Wagner and the decedent as tenants in common, but no proof was offered. The judgment of the trial court was correct.
Appellant also contends that there were notes and debts, secured and otherwise, owing to the decedent at the time of her death which were not accounted for. The evidence discloses that F.E. Wagner was a man of means; that he had sufficient money to and did make loans with his own money. There was no showing that these notes or debts were owing to the decedent. The testimony was that they were "outstanding." The judgment of the trial court will not be disturbed as to this item.
Sixth Item. The trial court found that the decedent at her death was the owner of one *Page 388 
government bond in the sum of $100 and the proceeds from the sale of two government bonds aggregating $200, and decreed the same to be property acquired by joint industry and ordered the administrator to account for the same. Appellant contends that items totaling $48.87, representing interest on these bonds, should have been accounted for. The appellee practically concedes this. The judgment of the trial court, therefore, should have been for the appellee to account for $48.87 as an asset of the estate acquired by joint industry.
Seventh Item. Etta Wagner's sister sued the estate and recovered a judgment in the sum of $605 for services rendered to Etta Wagner during her last illness. Appellee credited himself in his final account with this expense. Appellant contends that he should not be allowed the credit because he was personally liable therefor. Appellant is correct and the trial court was in error. In Re Wilson's Estate, 160 Okla. 23,15 P.2d 825, the rule is stated as follows:
"The reasonable value of proper funeral expenses which were ordered by and paid for by the husband of a deceased wife are chargeable against her estate. The expenses of last sickness which were ordered by and paid for by the husband of a deceased wife are not chargeable against her estate. If such expenses of last sickness have not been paid by the husband, they may be paid from the estate and charged against the husband's portion thereof."
Eighth Item. Appellant asserts that appellee should not have been allowed a credit of $473 in his accounting for funeral expenses of the decedent. This amount was withdrawn from the account of the decedent shortly after her death and was paid to the undertaker. This transaction took place approximately a year and a half before the administration proceedings were commenced on her estate. The justness and reasonableness of the account is not questioned. Appellant bases her contention on three grounds; First, that the withdrawal of this sum for this purpose before the appointment of an administrator constituted an alienation within the terms of section 1219, O. S. 1931; second, that no claim was filed for this expenditure; and third, that the appellee is personally liable therefor.
Where, before the appointment of an administrator, money belonging to the estate of a decedent is used by her husband to pay just and reasonable expenses of the funeral of the decedent, such action does not constitute either embezzlement or alienation within the terms of section 1219, O. S. 1931. Nichols Sheppard Co. v. Dunnington, 118 Okla. 231,247 P. 353.
It is the duty of the administrator to pay funeral expenses out of the first funds in his hand. Section 1258, O. S. 1931. There is no contention that the amount was exorbitant. It was just, owing, and was paid before the administration proceedings were commenced. It is not necessary here to determine whether or not an undertaker must present his claim for funeral expenses against the estate within the period prescribed for the presentation of claims, but we do decide that a claim for funeral expenses paid under these circumstances or paid by the administrator before the period for presentation of claims expires need not be presented or allowed. The only risk the administrator runs is that the court will not allow the full amount of an exorbitant claim on his final accounting. In Golden Gate Undertaking Co. v. Taylor (Cal.) 141 P. 922, the court said:
"Not only, then, is the charge for funeral expenses a debt of the estate, but it is a preferred debt of the first class, and is payable as soon as the executor or administrator has sufficient funds in his hands. It is not a debt arising upon a contract made by the decedent in his lifetime, and a creditor's claim, as defined in section 1493, Code of Civil Procedure, is not, therefore, required to be presented as a basis for action. Potter v. Lewin, 123 Cal. 146, 55 P. 783. * * * If the executor voluntarily pays the demand, he may undoubtedly claim credit for the payment of such amount as the court thinks proper, in the settlement of his accounts. See In re Estate of Galland,92 Cal. 293, 28 P. 287. * * *"
See In re Kelly's Estate (Wis.) 198 N.W. 280; Dampier v. St. Paul Trust Co., 46 Minn. 526, 49 N.W. 286. Furthermore, this is the credit against the estate of the decedent for which the estate is primariily liable. In re Wilson's Estate, supra.
Ninth Item. The administrator spent a total sum of $864.05 for repairs and maintenance on Farm No. 2. The appellant objects to a credit being allowed him for these expenditures. She contends that section 1218, O. S. 1931, prevents an administrator from taking credit for such expenditures made more than ten months after the administration proceeding were commenced where the estate is solvent. Suffice it to say, that the county court had not directed the administrator to deliver possession of this farm to the distributees, and so long as it remained an asset of the estate it was the duty of the administrator to keep the *Page 389 
farm in a good state of repair and to make proper expenditures toward that end. Appellant also contends that since the administrator received no order or authority from the county court at the time he made these expenditures, he is not entitled to credit therefor. It is not necessary for an administrator to get an order of the court in making proper expenditures, but if he does not do so, he runs the risk that the expenditures may not be allowed on final accounting if they are found to have been improperly made or if they are found to be exorbitant. Bancroft, Probate Practice, vol. 3, page 1638; In re Fulmer's Estate, 203 Cal. 693, 265 P. 920, 58 A. L. R. 430. The trial judge, in the exercise of his sound discretion, approved these expenditures, and correctly so.
Tenth Item. It appears that the trial court allowed the administrator credit for an attorney's fee of $500. No evidence was heard to determine the reasonableness of this fee. In the absence of such evidence the court was without power to fix the foe. United States Fidelity Guaranty Co. v. Town of Comanche et al., 114 Okla. 237, 246 P. 238.
It is also contended by appellant that the case of Naedelen et al. v. Wagner et al., 160 Okla. 66, 15 P.2d 567, is res judicata on the question that the appellant is entitled to be distributed one-half of the entire estate of Etta Wagner, whether acquired by joint industry or otherwise. In Naedelen et al. v. Wagner et al., supra, the action was instituted by Orville Wagner to have himself declared to be an adopted son of F.E. Wagner and Etta Wagner. That was really the only queston involved. That judgment was decisive on the question that Orville Wagner was not an adopted son and that the appellant for her deceased sister was an heir. It was not the intention of this court to usurp the power the probate court possesses to enter a decree of distribution as to the property of this estate. The questions involved in this appeal were not directly before the court. The case of Naedelen v. Wagner, supra, is not res judicata. Palmer v. Replogle, 152 Okla. 140, 4 P.2d 30; In re Assessment of First National Bank of Chickasha,93 Okla. 233, 220 P. 909.
Appellant contends that the administrator should have been charged interest on the funds of this estate accumulated by him as administrator because the estate was not distributed as soon as appellant thinks it should have been. The trial court found otherwise, and we shall not disturb this ruling.
This is the fourth appeal on various phases of this estate. There should be an end to litigation, and we regret we cannot render final judgment in this matter. We, therefore, remand the case for a new trial with these instructions:
1. If the administrator does not consent to account for the $1,600 bonus from the oil and gas lease as an asset of the separate estate of Etta Wagner, he should be removed and a successor appointed.
2. Evidence should be heard to determine the value of the services of the administrator's attorney for the benefit of this estate and a proper fee fixed by the trial court.
3. The administrator should segregate his accounts under two heads: Joint industry account and separate estate account.
4. He should charge himself with the following assets in the joint industry account: Bank balance $770.79; government bond $100; proceeds from sale of government bonds $200; interest on government bonds $48.87; and also any further interest or income on the above-described assets that may have accrued at that time.
5. He should charge himself, as assets of the separate estate: Farm No. 2; the $1,600 bonus, only as and if the administrator so agrees to charge himself or it is decreed to be an asset of the estate; also, the income from Farm No. 2 as shown in his previous account, and any additional income from the above assets of the separate estate that may have accrued at that time.
6. He should credit himself against the assets of the separate estate account with all expenditures for taxes, insurance, and expenses for repairs and maintenance on Farm No. 2 as shown by his previous account, and also any other legal expense chargeable to Farm No. 2 that may have been incurred since the date of his previous account and that is properly approved by the county court.
Then the trial court should credit the general expense of the estate, including funeral expenses, court costs, the administrator's fee, attorney's fee, and other like items that may have accrued in such proportion against the joint industry account and the separate estate account as he deems just and equitable, considering the total appraised value of each and such other factors as are proper. The trial court should then distribute the balance of the assets in the joint industry account to F.E. Wagner and should distribute the balance of the assets in the separate estate *Page 390 
account to F.E. Wagner and Gertrude Buikema in equal shares.
The judgment of the trial court is therefore, reversed and this cause is remanded for a new trial pursuant to the above instructions.
The Supreme Court acknowledges the aid of Attorneys J.C. Pinkerton and Hugh Ownby in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Pinkerton and approved by Mr. Ownby, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.
McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. BUSBY, J., absent.