This appeal grew out of a proceeding in the administration of the *Page 22 
estate of Daniel Kelly, deceased. Daniel Kelly died intestate, a resident of Creek county, Okla., in November, 1922, and left, as his heirs at law, Thomas C. Kelly, Patrick Kelly, Mrs. Anna Caufield, Margaret Nolan, and Mary Keen, brothers and sisters of deceased, and May Kelly, Eva Kelly, Veronica Kelly, Frank Kelly, and Will Kelly, nieces and nephews of deceased. Thomas C. Kelly petitioned the probate court of Creek county for letters of administration upon said estate, and was thereafter appointed administrator. In January, 1923, the administrator filed his inventory and appraisement which contained, in addition to a list of the assets and liabilities, the following notation:
"Deceased at the time of his death left $4,000 on time deposit in the Sapulpa State Bank of Sapulpa, Okla., to the credit of Daniel Kelly or Thomas C. Kelly. This money is not listed as an asset herein, but is claimed by Thomas C. Kelly."
On December 19, 1923, the administrator filed his final report, and prayed that the same be approved upon hearing; that the heirs be determined; and that a distribution of the assets be made. The final account did not include the above item. Before the hearing on the final report all of the above named heirs, except the administrator, filed written objections and exceptions to said report. The exceptions and objections, which go to the questions raised on this appeal, are that the administrator failed to account in his report for the $4,000 item or the interest thereon, and for failure to show an indebtedness of said administrator to deceased at the time of his death in the amount of $2,500 for wages. When the final report came on for hearing, the administrator moved to strike the objections and exceptions, and also demurred to the same The county court sustained both the motion to strike and the demurrer, approved and confirmed the final report, and decreed distribution of the balance in the administrator's hands. From this order, the objectors appealed to the superior court of Creek county, which appeal was later transferred to the district court. The administrator renewed his motion to strike the particular objections and exceptions above referred to in the district court. The district court, sitting as a probate court on appeal, sustained the administrator's motion and struck from the written exceptions all matters pertaining to the $4,000 item. A hearing was had upon the final report in the district court, and the objectors endeavored to inquire of the administrator concerning the $4,000 certificate of deposit, and attempted to offer evidence and to prove that said certificate of deposit was found among the assets of deceased; that one of the objectors still had possession of it, and that it was properly an asset of the estate of Daniel Kelly, deceased. There was some evidence offered without objection concerning this item, but most of the questions were objected to and the objections sustained by the court on the ground that the court had no jurisdiction to try the question, since it involved a dispute of title to personal property. As to the $2,500 item claimed to be owing to the estate for wages by the administrator, the district court seemed to recognize that it had jurisdiction to hear and determine this question. Testimony was heard on this question, but the claim of objectors was rejected and the report was approved with certain amendments thereto made by the administrator. From an examination of the evidence offered, we cannot say that the district court abused its discretion in approving the final report in so far as the $2,500 item is concerned. From the order of the district court approving said final report, the objectors have appealed. There is no question raised as to the manner in which the various objections and exceptions were preserved, and it seems to be conceded that the questions here raised are properly presented. The cause is briefed on the theory that the true question presented is whether or not the county court, as a court of probate, and the district court, acting as a probate court on appeal, has jurisdiction to determine whether the $4,000 certificate of deposit is an asset of the estate of Daniel Kelly, since the administrator lays claim of title to the same. We think the appeal presents a broader issue than that above stated. It seems that the questions which must be determined here are, Did the district court commit error in striking from the written exceptions all reference to the $4,000 item, in refusing to permit a thorough inquiry by objectors at the hearing, and did said court abuse its discretion in approving the administrator's final report in the face of the objections made and the proof offered? For the purpose of discussion we might ask, What action should the probate court take, within its prescribed jurisdiction, when presented with a situation like this?
The precise question seems never to have been before this court. The courts of several other states, which have probate codes *Page 23 
similar to ours, have considered similar questions, and it appears that the exact question has been passed upon by a few courts of other states, and discussed incidentally by others. This being a question of first impression in this jurisdiction, and one of such vital importance, since it goes to the power and jurisdiction of probate courts to fully administer upon the estates of deceased persons, we have given the question a most careful consideration and study in the light of the judicial decisions of other jurisdictions, their probate codes, and especially in the light of the constitutional provisions and statutes of this state, in view of what we conceive to be the jurisdiction and duty of probate court in the administration of the estates of deceased persons under the Constitution and laws of this state.
By sections 12 and 13, article 7, of the Constitution of Oklahoma, county courts are given original general jurisdiction of all probate matters, and among other things such courts are charged with the duty of transacting all business appertaining to the estates of deceased persons. By section 16 of said article all cases arising under the probate jurisdiction of the county court may be appealed to the district court, and on such appeal the cause shall be tried de novo upon both questions of law and fact. By section 1079, C. O. S. 1921, the county court has probate jurisdiction and the judge thereof power which must be exercised in the cases, and in the manner prescribed by statutes as follows:
"Second. To grant letters testamentary, of administration and of guardianship, and to revoke the same. * * * Fourth. To compel executors, administrators and guardians to render accounts. * * * Seventh. To order and regulate all distribution of property or estates of deceased persons. * * * Ninth. To exercise all the powers conferred by this article or by other law. Tenth. To make such orders as may be necessary to the exercise of the powers conferred upon it."
Section 1328, C. O. S. 1921, is as follows:
"When an exhibit is rendered by an executor or administrator, and person interested may appear and, by objections in writing, contest any account or statement therein contained. The court may examine the executor or administrator, and if he has been guilty of neglect, or has wasted, embezzled, or mismanaged the estate, his letters must be revoked."
With reference to the settlement of final accounts of administrators, section 1337, C. O. S. 1921, provides as follows:
"On the day appointed, or any subsequent day to which the hearing may be postponed by the court, any person interested in the estate may appear and file his exceptions in writing to the account and contest the same."
Section 1338, C. O. S. 1921, is in part as follows:
"All matters, including allowed claims not passed upon on the settlement of any former account, or on rendering an exhibit, or on making a decree of sale, may be contested by the heirs for cause shown. The hearing and allegations of the respective parties may be postponed from time to time, when necessary, and the court may appoint one or more referees to examine the account and make report thereon, subject to confirmation. * * *"
Section 1178, C. O. S. 1921, provides, among other things, that when an executor or administrator is suspended or removed, the judge of the county court must appoint a special administrator to take charge of the estate, and to exercise such other powers as may be necessary for the preservation of the estate.
Section 1182, C. O. S. 1921, is in part as follows:
"The special administrator must collect and preserve for the executor or administrator all the goods, chattels, debts and effects of the decedent, all incomes, rents, issues and profits, claims and demands, of the estate, must take the charge and management of, and enter upon and preserve from damage, waste and injury, the real estate, and for such and all other necessary purposes may commence and maintain or defend suits and other legal proceedings as an administrator; he may sell such perishable property as the county court may order to be sold, and exercise such other powers as are conferred upon him by his appointment. * * *"
It appears that the foregoing provisions of law point out the duty and the course to be pursued by the probate court in cases like this. The district court concluded that it had no jurisdiction as a court of probate to try a question involving title to personal property; and also concluded, we assume, that it had no jurisdiction to hear the respective contentions, and no duty to perform in connection therewith. If such were the law, probate courts would amount to an interference with the proper administration, preservation, and protection of the estate of deceased person instead of being the instrumentality upon which such duties are enjoined by the Constitution and laws of *Page 24 
this state. The administrator is the proper representative of the estate. He is appointed by the probate court, and that court has power to remove him for good cause. He is the proper person to represent the estate in suits by or against it. Our attention has been called to no provision whereby a suit could be instituted on behalf of the estate except by the administrator, his successor, or a special administrator appointed for that purpose, nor have we been able to find such provisions. If the probate court were without jurisdiction to afford a remedy to the objectors in this case, why could not an administrator lay claim to the entire assets of an estate, and appropriate the same without even danger of contest? Probate courts are creatures of the law, and their jurisdiction in this state is somewhat circumscribed and limited. Rust v. Gillespie,90 Okla. 59, 216 P. 480. They do not have all of the equity powers that go with the ordinary court of equity, even in matters arising within their probate jurisdiction. We think the trial court was correct in holding that a court of probate had no jurisdiction to try and finally determine the title to property. Of course such court could try the question as an aid to its proper performance of its probate duties, but it could not render such a judgment as would be binding upon the parties in another tribunal of competent jurisdiction or directly enforceable as judgments of courts of competent jurisdiction. The administrator would be entitled to a jury trial, which could not be given by the probate court. And if it may be said that a final judgment could be rendered, what would it avail the estate? It would require the aid of another tribunal in a proper proceeding to satisfy the demands of the estate.
The administrator contends that the fund belonged to him individually, and not to the estate. This amounts to a claim adverse to the estate the same as though it were made by a stranger. The administrator had a right to own in his own right property separate and apart from that of the estate, and he is entitled to claim all the safeguards provided by law for its protection, the same as anyone else.
The case of Hartwig v. Flynn et al., 79 Kan. 595, 100 P. 642, is the leading case on this question in that jurisdiction. In that case the executor went through the personal effects and papers of the deceased, Gottlieb Hartwig, and took therefrom three notes, two payable to William Hartwig, the executor, and one to Frederick Hartwig, a brother to the executor. These notes were neither inventoried nor accounted for in the executor's report and account. Certain heirs filed their written protests and objections against the approval of the report for the reason that the same did not include the notes above mentioned. The executor was removed, and the notes in question were ordered delivered to the new administrator as assets of the estate of the deceased. William Hartwig objected to the jurisdiction of the court to try and determine the title to the notes, and this is the principal question in the case. It was there held that in such a proceeding the probate court may conduct a hearing to determine whether the notes belonged to the estate or the estate has any reasonable claim thereto, but that such determination would not be binding on any person afterwards claiming such property in another forum. It was further said that the probate court had jurisdiction to determine whether the property belonged prima facie to the estate, but that such decision was not binding upon any person claiming the property. In the body of the opinion it is said:
"Upon the first appeal the district court did not attempt to determine the title to the notes in controversy, and only found that the petitioners had good grounds to believe that the notes belonged to the estate, and that an action should be brought in a court of competent jurisdiction to determine the title and ownership." This should have "left the way clear for a proceeding by the new administrator to bring a proper action to assert his dominion over these notes or to collect them."
And further, in that connection, it was said:
"As the orders made upon the first appeal determined the matters within the jurisdiction of the court, it was only necessary upon the last appeal to direct that such former order be executed or to make another order directing proceedings to be taken to determine the title to the notes, and provide for their collection."
The following authorities are in accord with the above case: Gille v. Emmons, 91 Kan. 462, 138 P. 608; In re Belt's Estate, 29 Wn. 535, 70 P. 74; Simms v. Guess, 52 Ill. App. 543; Simonton v. Simonton, 33 Idaho, 255, 193 P. 386; State ex rel. Barker v. District Court, 26 Mont. 369, 68 P. 856; Hillman v. Young, 64 Or. 73, 127 P. 793, 128 P. 124; Durst v. Haenni, 23 Colo. App. 431, 130 P. 77; Bates v. Lutz, 220 Ill. App.? 54; Heyer v. Sullivan (N.J.) *Page 25 
102 A. 248; In re Dolenty's Estate, 53 Mont. 33, 161 P. 524; Woerner's Am. Law of Administration, vol. 2 (2d Ed.) section 317.
Our attention has been called to the case of Stevens v. Superior Court of Placer County, 155 Cal. 148, 99 P. 512, in which it is held that where the executor on objections to his account alleges that certain property omitted from the account was conveyed to him individually by testator in his lifetime, the superior court, sitting in probate, has jurisdiction to determine the ownership of such property. That is a well reasoned case, and has been followed by several later decisions of the California court. It is not there stated that such a determination would be binding upon any person afterwards claiming the property in another forum. Neither is it pointed out how such a judgment, if it may be regarded as final, could be enforced. We are constrained to believe that such determination is merely for the purpose of facilitating the orderly progress of business in that court, and does not determine the ultimate rights of the parties. In a very recent opinion of the district court of appeals of the third district of California in the case of Shaw v. Palmer, 224 P. 106, that court took an entirely different view from that expressed in the Stevens Case. In the later case a dispute arose in the course of the administration over title to certain corporate stock certificates. In the body of the opinion it is said:
"The fact that the plaintiff was also a devisee under the will of the deceased does not alter the situation. As stated in the cases above cited, he was bound by the decree only in so far as he was an heir, a devisee, or a legatee. He certainly could not be bound by the decree in so far as it purported to distribute his separate property no more than could a third party or an entire stranger to the will of the deceased and the proceedings attending the administration of the estate could be bound thereby. Let it be supposed that the executor of the will of a deceased person should cause to be included in the inventory setting forth the property and other assets of the estate of the deceased with real or personal property of a person in no way connected with the deceased or her estate and not mentioned in the will, and that such property was distributed to the heirs according to the terms of the will. Could it be said that in such case such party would be bound by the decree of distribution so that he could not maintain an action for the recovery of such property against the heirs to whom the same had been distributed by a probate court? The question answers itself."
The court then concludes that the devisee under the will is not bound by the decree of the superior court, sitting as a court of probate, but is entitled to have the title to such property litigated and adjudicated by a court having jurisdiction to try and determine questions of title to property.
The probate court did have jurisdiction to fully administer the estate. It had a duty to perform within this jurisdiction when it was made to appear that the deceased had on time deposit at the time of his death $4,000, and that the administrator refused to account for it as a part of the estate, but claimed title thereto. It is apparent from the record that as to this item in particular there was a conflict of interest between the administrator and the estate which he was appointed to collect and preserve for the heirs at law. To say this question could not be inquired into by the probate court, in the manner attempted by the objectors, would render nugatory sections 1328, 1337, 1338, supra, as well as many other provisions of the law and the Constitution. Why should heirs at law or other persons interested in the estate be expressly authorized to file written exceptions to the administrator's report and contest the same, if the probate court had no jurisdiction to hear them or inquire into the matter of contest to determine whether the fund belonged to the estate or that there existed good reasons for believing that it was an asset of the estate, and to afford some remedy whereby the claims of contestants, if well founded, could be enforced? The written objection pertaining to the $4,000 item and the offer of proof made a prima facie showing that the money belonged to the estate of the deceased. It would appear that the written exceptions alone would be a sufficient showing that the objectors had good grounds for making the claim, and to authorize the court to act. This being the case, it was the court's duty to either revoke the letters of the administrator, or to suspend him as such until the question could be determined. It is made the duty of the probate court, when he finds that the administrator has wasted, embezzled, or mismanaged the estate, to revoke his letters. As to whether the administrator should have been finally removed from office or merely suspended until the question of title to the fund could be determined is a question which rests within *Page 26 
the sound discretion of the probate court. If the letters be revoked, a successor should have been appointed and directed to commence a proceeding in a court of competent jurisdiction to determine title to the funds. If the court should determine that the administrator was in good faith in making claim to said fund and that he could and would faithfully perform his duties to the estate in other particulars, it would perhaps be proper to only suspend him and appoint a special administrator for the sole purpose of maintaining an action on behalf of the estate against the administrator in a court of competent jurisdiction to determine whether said fund actually belonged to the estate.
It is true that the objectors did not ask in their written exceptions to the final report to have the administrator removed or suspended. A proceeding to remove the administrator would avail nothing without first a proper showing of facts such as was attempted. The effect of the objections made was to withhold approval of the final account until the administrator should account for the money alleged to be withheld or until it could be determined who was the owner of the money. The administrator refused to account to the estate for the money, but claimed it as his own. Under this state of affairs, it was the court's duty to take steps to have the question determined on his own motion. And it was certainly an abuse of discretion to approve the administrator's report in the face of the objections thereto, and the offer of proof that $4,000, belonging to the estate, had not been accounted for.
The judgment of the district court is therefore reversed, with directions to order approval of the administrator's final report withheld until the dispute as to title to said fund shall have been determined, and to proceed to have said matter determined according to the views herein expressed.
BENNETT, TEEHEE, DIFFENDAFFER, and LEACH, Commissioners, concur.
By the Court: It is so ordered.