In the Matter of the ESTATE of Minnie L. FULLERTON, Deceased (two cases).

Nos. 39003, 39056.

Supreme Court of Oklahoma.

July 3, 1962.

Rehearing Denied Oct. 16, 1962.

A. C. Wallace, John R. Wallace, Ben T. Owens, Melvin H. Landers, Miami, for plaintiffs in error, Carrie Belle Fullerton, Patience Fullerton Stevenson, Katherine Fullerton Clammer, Pauline Fullerton Wright and Elizabeth Fullerton Coleman.

Nesbitt & Nesbitt, Miami, for defendant in error and cross-appellant, Samuel C. Fullerton, Jr., executor.

L. Keith Smith, Joe T. Dewberry, Jay, Jack Brown, Miami, for cross-appellant, Samuel C. Fullerton, Jr., individually.

DAVISON, Justice.

This matter involves the disposition of two appeals by Carrie Belle Fullerton Wagoner, Patience Fullerton Stevenson, Katherine Fullerton Clammer, Pauline Fullerton Wright and Elizabeth Fullerton Coleman (herein referred to as appellants), daugh-

ters and devisees of Minnie L. Fullerton, deceased, from a judgment of the district court (on appeal from the county court) denying their objections to the executors final account. Samuel C. Fullerton, Jr., son and devisee of said deceased, has filed cross appeals in his capacity as executor and as an individual.

Minnie L. Fullerton died testate April 13, 1950, leaving an estate that was later inventoried and appraised at more than $239,-000. The will was admitted to probate and pursuant to direction therein Samuel C. Fullerton, Jr., was appointed executor. On August 27, 1957, the executor filed his final report and petition for distribution. The appellants filed their exceptions and after extensive hearings and a number of continuances the county court, on April 16, 1959, with several exceptions, approved the final account and ordered distribution in accordance with the will. Appellants appealed to the district court. By stipulation of the parties, and reserving the right to object to the admissibility of the evidence, the matter was there tried and decided upon the record made from the county court hearings. The district court adopted and made the findings of fact and conclusions of law requested by the executor. Judgment was rendered approving the final account and petition for distribution except that the judgment directed Samuel C. Fullerton, Jr., refund to the estate the amount of $26,754.-02 for taxes. The present appeals are from this judgment.

Samuel C. Fullerton, Jr., individually and as executor, urges that the appeals of appellants should be dismissed on the grounds that appellants have not followed the requisite method of appeal and this court has no jurisdiction. It appears from the record and briefs that there was considerable doubt in the minds of counsel for appellants as to the necessity of a motion for a new trial and appeal after denial of such motion or whether the appeal should be direct from the judgment. For the protection of appellants their counsel undertook to perfect appeals from both. Accordingly, on the day of

judgment (September 9, 1959), the appellants gave notice of appeal to this court by case made (12 O.S.1961 § 972). After securing extensions of time within which to make and serve case made and appeal, the appeal was filed in this court on March 7, 1960, and numbered 39056. Appellants also filed motion for new trial on the day of judgment. The motion was overruled on October 30, 1959, and appellants gave notice of appeal on the original record (12 O.S. 1961 § 956.1 et seq.). This appeal was filed in this court on January 27, 1960, and was numbered 39003. It was in this appeal that Fullerton, Jr., as executor and as an individual, filed his cross appeals.

It is argued by Fullerton, Jr., that appeal is properly from the judgment and that both methods of appeal are not available to appellants and that, since no election was made to pursue only one, both appeals should be dismissed.

 From our examination of the record we conclude there was a bona fide doubt in the mind of counsel for appellants as to the method of appeal to pursue and that this doubt was to some extent shared by the trial judge. Although the executor contends the appeal should be direct from the judgment, still his counsel prevailed upon the trial judge to refuse to settle appellants' case made in connection with their appeal direct from the judgment, and it was necessary for this court to direct the trial judge to complete such settlement. It appears that the procedural steps in both appeals requisite to vesting this court with jurisdiction were in accordance with the above cited statutes. Both appeals were filed within the time required by statute or lawful extension thereof. Under the circumstances the appellants have in either event protected their rights of appeal and the appeals will not be dismissed.

A proper understanding of the parties respective contentions requires a recital of facts and circumstances reflected by the record. Samuel C. Fullerton, Sr., husband of Minnie L. Fullerton and father of the present executor and appellants, died in

1943. In the probate of his estate a partition proceeding was carried out and terminated in November, 1948, with an "Order Confirming Report of Commissioners in Partition And Decree of Partition." In this Decree of Partition, Samuel C. Fullerton, Jr., and Minnie L. Fullerton elected to take at the appraised value all of the numerous parcels of real estate, the personal property listed under "notes, stocks, contracts and royalty interest;" and personal property listed under farm machinery and equipment. The Decree of Partition also divided a large number of Black Angus cattle among Minnie L. Fullerton, Samuel C. Fullerton, Jr., and appellants, in portions equal in value to their respective shares in the estate.

It appears that after the Decree of Partition Samuel C. Fullerton, Jr., and Minnie L. Fullerton each owned approximately the same number of cattle. On or about December 28, 1948, these parties by oral arrangement began a joint operation for the care, management and sale of their cattle and farming operations with each contributing equally to the expense of the operation. However the proceeds of any sale of cattle belonged to the party owning the sold cattle. This arrangement continued to the death of Minnie L. Fullerton on April 13, 1950.

By deeds dated January 13, 1949, Minnie L. Fullerton conveyed to Samuel Clyde Fullerton, Jr., a large number of parcels of real estate. It appears that these deeds divested her of all real estate, except her undivided interest in some of the homestead property, which she acquired as an heir and in the above mentioned Decree of Partition. As a part of this transaction Fullerton, Jr., and his wife, executed a note to Minnie L. Fullerton for $27,067.76, due in 10 years with interest from maturity. This note and its validity as a binding obligation and the value given it for estate tax purposes constitute one of appellants' assignments of error.

On January 17, 1949, Minnie L. Fullerton executed her last will and testament wherein she made cash bequests to some of the appellants. The will devised to Samuel Clyde Fullerton, III, all of her undivided interest in real estate that was a part of the homestead of deceased and her husband. (The balance of the title was owned by Fullerton, Jr.) The will also devised to Samuel Clyde Fullerton, Jr., (1) all her interest in personal property listed in the Decree of Partition in her husband's estate under "notes, stocks, contracts & royalty interests," including her inherited interest and that purchased in the Decree of Partition, (2) all her interest in personal property listed in the Decree of Partition under "farm machinery, equipment & livestock," including her inherited interest and that purchased in the partition proceedings, and (3) all registered cattle set off to her in the Decree of Partition together with all increases from said cattle. The will also devised all her remaining personal and mixed property "the same consisting of cash and government bonds" to appellants, share and share alike.

As stated the will was admitted to probate and on April 28, 1950, the county court made an order directing the continuance of the "joint operations" arrangement for care of the cattle. Notice to creditors was given and the time to file claims with the estate expired September 4, 1950.

On October 6, 1950, the appellant Carrie Belle Wagoner filed a Petition for Preliminary Distribution of assets of the estate, including approximately 228 head of Black Angus cattle which were being fed and maintained at the expense of the estate. After notice and on October 27, 1950, a decree of preliminary distribution was entered. The decree distributed to Samuel Clyde Fullerton, III, the real estate interest set forth in the will, and to Samuel Clyde Fullerton, Jr., the property described in the will including the cattle of deceased. The decree also directed the delivery of 18 United States Bonds to parties named therein as having survivorship rights, and distributed deceased's furniture, dishes, silverware and miscellaneous personal effects.

■ Appellants make numerous complaints that executor has failed to make a full accounting, has omitted assets of the estate, has improperly expended funds of the estate, and uniformly acted to their prejudice. At the outset we call attention to our statement, regarding review of appeals in these matters, in Wise v. Cutchall, 171 Okl. 60, 41 P.2d 864:

"In a trial de novo in the district court on appeal from the county court in a probate matter, this court will not disturb the findings and judgment of the trial court on review, unless such findings and judgment are clearly against the weight of the evidence."

See also In re Trope's Estate, 190 Okl. 453, 124 P.2d 733, and Martin v. Sherwood, 197 Okl. 422, 172 P.2d 393.

Appellants state and all parties agree that the burden was on the executor to prove the correctness of his account and further that the position of an executor is one of trust and that he is charged with the utmost good faith. In re White's Estate, 175 Okl. 439, 54 P.2d 1074.

Appellants complain of the expense and expenditures made by the executor in the carrying on of the joint operations involving the care and feeding of the cattle of deceased and executor. As above described this arrangement was initiated by deceased and her son (now executor) in December, 1948, and by court order (April 28, 1950) was continued by the executor through September, 1950. Appellants argue this expense was unreasonable and that it should have been borne by Fullerton, Jr., individually. The latter proposition is based on 84 O.S.1961 § 175, which provides that testamentary dispositions are presumed to vest at the testator's death and further that it was prejudicial to appellants as residuary devisees. Admittedly the one-half part charged to the estate was a considerable amount.

Title 58 O.S.1961 § 290, states that the executor is entitled to possession of the real and personal estate of the deceased (with certain exceptions not here pertinent) and 58 O.S.1961 § 251, requires the executor to take possession of such property. Title 58 O.S.1961 § 525, provides that the executor shall be allowed all necessary expenses in the care, management and settlement of the estate. Furthermore 58 O.S.1961 §. 621 et seq., providing procedure for partial distribution prior to final distribution, restricts the filing of a petition for partial distribution to a time more than four months after the issuance of letters testamentary. The estate was not charged with the expense of feeding the cattle after September, 1950, although the proceeding for partial distribution was not completed until October 27, 1950.

■ Deceased's bequest of the cattle to her son, Fullerton, Jr., was a specific bequest or legacy as defined in 84 O.S.1961 § 1, and was a disposition of the property by will. Under 84 O.S.1961 § 3, providing the order of resort to property for payment of debts and administration expenses the residuary estate was charged with payment of the expense before resort to the cattle disposed of by the will. Wren v. Scott, 192 Okl. 325, 136 P.2d 877, 878.

■ From our examination of the record we fail to find wherein the acts of the executor or judgment of the court were contrary to the provisions of the above statutes.

■ We will now dispose of that part of appellants' complaint that the expense of feeding and caring for the cattle was exorbitant and unreasonable. The lower court found to the contrary. The exact number of cattle in the combined and approximately equal herds of the estate and executor is not shown by the record, but it appears the number was much in excess of 400 head. With few exceptions the cattle were valuable registered Black Angus. At the January, 1950, sale (prior to deceased's death) the total sales were $197,675, of which 27 head belonged to deceased for $97,875 and 35 head belonged to Fullerton, Jr., for $99,800. The executor appeared and testified and was cross-examined at the hearing on the final account. A firm of certified public accountants made an audit of the

estate, including the joint operation, in March, 1953, and in May, 1957. These audits reflected an equal division of feed and care expense between the two herds and crediting of sales of estate cattle to the estate account. It appears the cattle of Fullerton, Jr., received the same feed and care as the estate cattle. Nor do we find any substantial support in the record to support appellants' contention that Fullerton, Jr., was, prior to September 30, 1950, preparing the estate cattle for a January, 1951, sale. The lower court's findings and judgment approved these expenditures. It is our conclusion that the finding and judgment are not against the clear weight of the evidence.

In connection with the joint operation subsequent to April, 13, 1950, appellants also complain of the expenditure of $631.88 for advertisements in the Journal (Aberdeen Angus) and $750 to the Aberdeen Angus Association. The evidence shows that these amounts were paid pursuant to agreements made prior to deceased's death and having some relation to the prior 1950 sale of cattle. It was a continuing and existing obligation. Similar objection was made to an item of $388.79 for travel expense by Phil Ljungdahl. This party was employed as superintendent in charge of the cattle operations and in such position, according to the executor, did considerable traveling. Under the evidence we cannot find that approval of these expenditures was contrary to the clear weight of the evidence.

■ Appellants further complain that executor failed to account for feed, seed and fertilizer on hand at deceased's death. The evidence regarding this material appears in the deposition of Phil Ljungdahl. There is a controversy as to whether this testimony may be considered. In the trial in the district court the court sustained appellants' objection to consideration of the deposition on the ground it was not introduced in evidence. We observe however that the lower court's finding and judgment on these items was in favor of the executor. The record reflects that at the last hearing

in the county court on January 15, 1958, it was stipulated that the deposition was taken on March 1, 1958, with all parties represented. The matter was then submitted on briefs and on April 16, 1959, the county court entered a final decree reciting it was based on the evidence and a reading of the deposition and briefs. As heretofore stated the matter was by stipulation tried in the district court on the record of the county court hearing including the depositions taken and filed therein. It is our opinion that under the circumstances the district court erred in excluding the deposition of Ljungdahl.

■ In his deposition Ljungdahl stated that he was manager of the farms in 1950 including the cattle and buying feed and at the time of deceased's death there was no fertilizer and at most a part of a sack of seed left over from fall planting; that one-half of the feed on hand was about 125 bushels of corn and 625 bushels of oats and a few sacks of mill feeds; that it was fed to the cattle, including some left from the January (1950) sale that were left to be bred. We conclude this testimony sufficiently accounts for this material and its proper disposition.

■ Appellants also complain of miscellaneous improper expenditures by the executor. Briefly these items are ad valorem taxes on deceased's home in the sum of $160.21; public utility bills in relatively small amounts; plumbing repair expense on the home residence for $251.18; pasture rent in the sum of $462.18 for pasture in connection with the joint operations; and $247.50 paid for change of registration of the cattle with the Aberdeen Angus Association. The lower court by its findings and judgment approved these expenditures. From our examination of the record we cannot say that the action of the trial court was against the clear weight of the evidence and its judgment thereon is affirmed.

Appellants next complain of the finding and judgment of the trial court that the note of January 13, 1949, for $27,067.76, given by Fullerton, Jr. (and his wife), to the deceased, was given for a special pur-

pose whereby it was not an obligation to pay money and was not an asset of the estate. Appellants contend that the county court and the district court on appeal, in a probate matter, is without jurisdiction to determine title to assets claimed by the executor personally if there is prima facie evidence that title is in the estate. They argue the executor should have been removed or suspended and a special administrator appointed to bring an action in the district court to determine title to the note, or the note should have been distributed to appellants so they could bring such an action.

We will first dispose of the sufficiency of the evidence to sustain the finding and judgment. On January 13, 1949, the deceased conveyed to Fullerton, Jr., numerous parcels of land. The evidence and testimony of Fullerton, Jr., is that the conveyance of the land was a gift to him for which he was to pay no money, but that at the suggestion of the attorney then representing the deceased, he (and his wife) executed the note in the above amount as representing the value of the real estate. The purpose of the note was for use in the event of inquiry by an interested taxing authority. Fullerton, Jr., testified, without being controverted, that the agreement was that the note was not to be paid.

■ Appellants contend this testimony contradicts or varies a written instrument by parol evidence. In Harlow Pub. Co. v. Walden, 168 Okl. 163, 32 P.2d 278, we stated:

"Evidence offered for the purpose of showing that a written instrument was delivered conditionally does not constitute contradicting or varying a written instrument by parol. Such evidence does not tend to show any modification or alteration of the written agreement, but that it never became operative, and that its obligation never commenced."

And in Hogue v. McClain County Nat. Bank, 173 Okl. 122, 47 P.2d 575, we held:

"As between the original parties to a note, or between the payer and any

person not a holder in due course, the consideration for the note may always, in the absence of an estoppel, be inquired into, and a want or failure of consideration constitutes a good defense."

■ It is our conclusion that the finding and judgment of the trial court is not against the clear weight of the evidence.

This brings us to the matter of disposition of the legal proposition that the county court and district court on appeal was without jurisdiction to find and adjudge that the note was not an obligation to pay money and was not an asset of the estate.

By Section 13, Article 7 of the Constitution the county court is given "the general jurisdiction of a Probate Court," including jurisdiction to "settle accounts of executors * * *; including the * * * settlement * * * and distribution of the estates thereof." Under 58 O.S.1961 § 1, the county court has probate jurisdiction and the judge thereof power to compel executors to render accounts; to order and regulate all distribution of property or estates of deceased persons; to exercise all the powers conferred by "this chapter or by other law;" and to make such orders as may be necessary to the exercise of the powers conferred upon it. Title 58 O.S. 1961 §§ 545, 554, 555, 556 provide for exception to or contest of the account and hearing thereon and settlement thereof. By 58 O.S.1961 §§ 631, 632 it is made the duty of the court, to distribute the residue of the estate in the hands of the executor to the persons entitled thereto and the proportions and parts to which each shall be entitled.

It is clear that the foregoing statutory provisions point out the duty and course to be followed by a probate court in the settlement of an account and distribution of an estate. It is our opinion that the basic proposition presented by the situation under consideration is the settlement of the final account of the executor and incidental thereto the determination of his personal indebtedness to the estate. The executor is

not claiming that he, as an individual, owns the note or the money it represents, but contends he is not indebted to the estate.

 In In re Griffin's Estate, 199 Okl. 676, 189 P.2d 933, we held the probate court had jurisdiction to determine the source of title in settling the heirs' dispute as to their respective proportionate parts, and quoted from 21 C.J.S. Courts § 304, p. 550, as follows:

"In the absence of statutory restrictions probate courts have such ancillary and incidental powers as are reasonably necessary to an effective exercise of the powers expressly conferred."

and from 14 Am.Jur. Courts, § 8, pp. 251, 252, as follows:

" 'The modern tendency is to extend the jurisdiction of the probate court in respect to matters incidental and collateral to the exercise of its recognized powers.' "

In 34 C.J.S. Executors and Administrators § 840, p. 966, it is stated:

"As a general rule probate courts have jurisdiction to do everything necessary to the full and final administrations of estates, and should so exercise their powers as to settle all questions in controversy if this is practicable. * * *"

Title 58 O.S.1961 § 285, states the executor is liable for any just claim which the testator has against him "as for so much money in his hands, when the debt or demand becomes due."

This court has consistently upheld the right of retainer as against an heir or devisee for their debts due to the deceased. See Smith v. Citizens National Bank in Okmulgee, Okl., 313 P.2d 505; In re Dorris' Estate, Okl., 292 P.2d 399; and In re Dayton's Estate, 173 Okl. 180, 46 P.2d 933. In the Smith case we held the probate court had jurisdiction to determine the indebtedness of an heir or devisee to the estate, the relative priority of a judgment lien, and further that the running of the statute of

limitations on the debt was no bar to the right of retainer.

 We are convinced that the probate court having jurisdiction to make settlement and distribution of a decedent's estate and to determine the share of each distributee, can inquire into and determine the issue of the indebtedness of the distributee to the estate.

Appellants cite In re Kelly's Estate, 132 Okl. 21, 269 P. 282; In re Wagner's Estate, 178 Okl. 384, 62 P.2d 1186; In re Jones Estate, 195 Okl. 168, 155 P.2d 980; and Pirtle v. Wright, 187 Okl. 77, 101 P.2d 625. These cases are not in point under the circumstances being considered. They involve the jurisdiction of the county court to finally determine title to real or personal property in a probate proceeding as between claims of title based on heirship, bequest or devise and those of persons claiming title adversely to the estate. As shown above the proposition here was inquiry into and determination, in connection with settlement of final account and distribution, of whether the executor as an individual was indebted to the deceased's estate.

 Appellants also contend that the testimony of Fullerton, Jr., relating conversations had with deceased concerning the circumstances under which the $27,067.76 note was given was inadmissible. They contend he was an incompetent witness under the provisions of the Dead Man's Statute, 12 O.S.1961 § 384. This court, under practically identical circumstances, decided this question adversely to appellants' contention in Clammer v. Fullerton, Okl., 259 P.2d 823. In that case the present appellant Clammer appealed from a ruling made in her father's estate excluding her testimony, whereby she sought to relate transactions with her father, to show she was not indebted to her father. We reversed the lower court's ruling and held the testimony admissible stating:

"The inhibition provided for under 12 O.S.1951 § 384 is leveled against persons asserting a cause of action, the title to which was acquired immediately

from a deceased person, and not against persons asserting a defense to such cause of action, * * *."

Appellants further make the contention that deceased, prior to her husband's death, was the owner of a one-half interest in royalty interests in zinc and lead properties and that this interest should have been included in the final account as an asset of the estate that was not disposed of by her will and subject to being distributed to them as residuary legatees and devisees. The county court and the district court on appeal found and held to the contrary. These mineral interests are claimed by the executor to be his individual property by deed, inheritance and purchase in the heretofore described Partition Decree in the estate of Fullerton, Sr., (husband of deceased and father of executor and appellants) and by deceased's will and the October, 1950, Decree of Partial Distribution in the present estate. Appellants argue that under the evidence a special administrator should have been appointed to bring an action to determine the title, or the royalty interests distributed to the appellants so they could bring such an action.

We believe the will of deceased, wherein she gave to Fullerton, Jr., "all her right, title and interest" in property described in the Decree of Partition in her husband's estate as "notes, stocks, contracts & royalty interests" does include and bequeath all royalty interests she owned as will be hereinafter shown. The proposition presented is whether under the Constitution and probate statutes and our decisions the circumstances are sufficient to require the probate court to take the action requested by the appellants.

Oklahoma Constitution, Art. 7, § 12, states that county courts are without jurisdiction in matters wherein the title of land may be in dispute. Section 13 of Art. 7, determines the jurisdiction of county courts in probate matters including the settlement and distribution of estates of deceased persons. In In re Kelly's Estate, supra, 132 Okl. 21, 269 P. 282 this court construed the above

sections of the Constitution and applicable probate statutes in a situation where on hearing on final account, the administrator in his individual right, claimed title adversely to the estate to a joint bank account held in his and the deceased's name. We held that a court of probate had no jurisdiction to try and finally determine the title to property, but that the probate court has jurisdiction, and it becomes its duty to hear the objections of the heirs to the final account, and to determine whether the fund is properly an asset of the estate, or that there are good grounds for believing that the same is an asset of the estate, and, upon a finding of either fact in favor of the objecting heirs, it becomes the duty of the court to remove or suspend the administrator and appoint another or a special administrator to commence proceedings in a court of competent jurisdiction to determine the title to the funds.

In In re: Wagner's Estate, supra, 178 Okl. 384, 62 P.2d 1186 we followed the cited Kelly case and stated:

"* * * In administration proceedings it is the duty of the county court to see that all the assets of the decedent are properly accounted for by the administrator. For that purpose, evidence that property has not been accounted for is admissible in a hearing on the final account of the administrator, but a mere allegation or contention is not sufficient justification in itself to cause the removal or suspension of the administrator, and, while the county court cannot try the title to real or personal property, it is within its jurisdiction to hear testimony on the question of whether title to the property claimed by the administrator in his individual capacity is vested in the estate of the decedent and, if it finds the contention groundless, it may settle the account and distribute the estate without removing the administrator. To hold otherwise would place it within the power of any heir, by making allegations without any merit

to them, to bring about the removal of an administrator who had been faithful to his trust and to burden the estate with prosecuting groundless suits. * * *"

In the Kelly case we said the evidence of the objecting persons must present "good grounds" and amount to a prima facie showing the funds belonged to the estate and in the Wagner case we used the words "sufficient evidence" and "reasonable grounds." See also In re Jones Estate, supra.

It is uncontroverted that record title to all the royalty interests was at all times during his lifetime vested in Fullerton, Sr., and that the royalty payments were made only to him. There is evidence that for income tax saving purposes the income was reported in equal shares by him and his wife. After his death in 1943, and during the probate of his estate, the heirs, including his wife (present deceased) executed a mining lease as to one royalty interest, reciting percentage ownership consistent with only their inherited shares. In November, 1948, when the Partition Decree was rendered in the father's estate, and deceased and Fullerton, Jr., purchased the royalty, no question was raised as to present deceased having any separate or independent interest. There was evidence that the accountant employed in the present matter, relying upon the above income tax returns, initially reflected in the present deceased a greater interest in the royalty income than the total of her inherited interest and the interest acquired in the Partition Decree. However, upon discovering the mistake, the accountant made an adjustment consistent with her record interest. We also note that in deceased's will the devise of the residue of her estate to the appellants describes the same as "consisting of cash and government bonds." This is to some extent indicative that deceased believed her prior testamentary disposition in the will of royalty interests devised all of her interests of that character. From our examination of the record it appears clear that deceased and

appellants in all prior transactions and proceedings presented no claim or contention that deceased was the owner of one-half the royalty interests before her husband's death in 1943.

Appellants' contention of deceased's prior mineral ownership is based on events beginning with the marriage of deceased and her husband. Evidence was introduced and tendered to the effect that at the time of said marriage in 1901, the deceased's father gave her $1000 in stock in a toll bridge and that her husband used the proceeds thereof in promoting mining interests by reason of which he considered and felt she owned one-half interest therein. The record does not reflect when these mineral interests were acquired, but it appears such acquisition was many years after the marriage. Appellants do not present any decisions or authorities informing us on what legal theory or basis deceased owned the one-half interest. It appears to us that deceased's husband probably gave her one-half of the income. The lips of both deceased and her husband are sealed by death.

■ Appellants rely upon oral statements of their father. In Ward v. Ward, 197 Okl. 551, 172 P.2d 978, we stated:

"Oral testimony of oral statements against interest made by deceased persons many years before is the weakest of all evidence."

■ Furthermore appellants must base their claim on the rights of their deceased mother and are required to furnish the same quality of proof as would have been required of her.

In Ward v. Ward, supra, we further stated:

"When a citizen of this state dies, holding title to real estate in his own name, which he has so held and managed and occupied for several years as exclusive owner, and another appears and claims an interest therein from the time of acquisition thereof by the decedent, the courts are required to leave the title in the decedent, as the parties

themselves had left it, unless the adverse claimant can establish his interest therein by evidence which is clear, unequivocal, and decisive."

■ From a reading of the cited case of Ward v. Ward, we believe the evidence therein was probably more favorable to the claimant of the property therein involved than the circumstances presented here but that this court reversed the judgment in favor of such claimant. We cannot say that the judgment of the lower court in the present case, as to this portion of the proceeding, was contrary to the clear weight of the evidence.

The next proposition urged by appellants is that the judgment of the lower court distributes assets in accordance with documents not accurately identified and not admitted to probate and that such distribution is void. This has reference to that portion of deceased's will whereby she devised to Fullerton, Jr., all her interest in property acquired by her in her husband's estate and described in the Decree of Partition in that estate as "notes, stocks, contracts & royalty interests" and "farm machinery, equipment and livestock."

Deceased's will in referring to the above document describes it as the "Order Confirming the Report of the Commissioners in Partition and Decree of Partition Made and Entered in the Matter of the Estate of Samuel Clyde Fullerton, Dec'd., Probate No. 2892." This identical document was procured from the files of the county court and introduced in evidence. Furthermore the words describing the property appear in the above Order. We conclude the document was accurately identified.

We understand the second part of the above proposition to be that the Decree of Partition should have been included in the probate as a part of the will. In a number of jurisdictions, a will may incorporate in itself by reference any document or paper not so executed, so as to take effect as part of the will, such as inter alia, a mere list, schedule, or memorandum. For a discussion of this doctrine of incorporation in such jurisdictions, see 94 C.J.S. Wills § 163a p. 952 et seq. A few jurisdictions have adopted a contrary rule, but the rule is subject to some exceptions. In 94 C.J.S. Wills § 163b p. 957, it is stated:

" * * * The general rule in such jurisdictions is that documents of a strictly testamentary character which have not been executed in accordance with statutory requirements may not be incorporated into a will by reference. * * * "

and 94 C.J.S. Wills § 163 at p. 958:

" * * * While papers containing testamentary dispositions may not be incorporated by reference, papers of an identifying or clarifying character may be so incorporated. * * * "

■ In the present case the testamentary disposition is complete and the referred to Decree of Partition is only for identifying purposes. Under either rule incorporation by reference was permissible.

■ To some extent there appears to be a division of authority as to the necessity of including an extrinsic paper in the probate. Here the testamentary disposition was in the will and the extrinsic Decree of Partition was for identifying purposes only. Under these circumstances the extrinsic paper was clearly not required to be included in the probate. In 95 C.J.S. Wills § 313f p. 130, it is stated:

"Generally, a paper extrinsic to the will need not be included in the probate; but such a paper may be included if clearly referred to and identified in the will and proved to be the one the testator intended to incorporate by reference."

See also White v. Reading, 293 Mo. 347, 239 S.W. 90, and Phillipson v. Watson, 149 Kan. 395, 87 P.2d 567.

■ Furthermore a will describing the property given in such a way as to furnish the means of identifying it describes the property sufficiently, and absolute certainty is not required, since that is certain which

may be made certain. 96 C.J.S. Wills §
747, p. 142.

■ Appellants further complain that
the judgment is erroneous in a number
of other respects. This proposition as will
be seen, involves either the question of as-
sets of the estate or indebtedness to the
estate, and the determining thereof in con-
nection with settlement of the final account,
and heretofore treated in this opinion. We
will consider these collectively as we believe
they involve the proposition of whether the
judgment is clearly against the weight of
the evidence. These disputed items are:
(1) Miscellaneous farm equipment that
executor individually claims was given him
prior to deceased's death; (2) A note dated
August 27, 1949, in the original amount of
$5000, secured by chattel mortgage, given
by appellant Katherine Clammer to First
National Bank of Miami, Oklahoma. This
note was not a bank loan. It was secretly
arranged by deceased whereby she fur-
nished the money and the loan was made to
appear as being made by the bank rather
than by deceased. On the death of de-
ceased the note was delivered by the bank
to the executor. Appellant Clammer con-
tends deceased later canceled all her debts
to deceased. (3) An account for $1424
owed by appellant Clammer, representing
deceased's share of Mrs. Clammer's debt,
by reason of the latter purchasing some
farm equipment and horses. Appellant
Clammer also contends deceased canceled
this debt.

The judgment of the trial court was ad-
verse to appellants' contentions as to all of
these enumerated items. It is our opinion
that the judgment was not clearly against
the weight of the evidence.

In connection with item 2 above (note for
$5000) and item 3 above ($1424 account)
owed by Katherine Clammer, it is contended
that appellants, as residuary legatees, have
disclaimed any interest therein and that ap-
pellant Katherine Clammer should not be
charged for this indebtedness. This is par-
tially correct. As a proposition of disclaim-
er this is a personal matter between the ap-

pellants. The exceptions filed by all the
appellants to the final account omit mention
of these items. The "Additional Excep-
tions" filed by Katherine Clammer deny the
indebtedness but make no mention of dis-
claimer. The appellants Wagoner and
Wright testified they approved striking
these items as assets of the estate. We be-
lieve the choice of disclaiming any interest
in these items as assets of the estate should
be left to the appellants Elizabeth Coleman
and Patience Stevenson.

■ Related to the last proposition is
appellants' contention that a Cadillac auto-
mobile was not an asset of the estate and
that appellant Pauline Wright should not
be charged with the value thereof in the
final account. This car was bought by de-
ceased and the title placed in the name of
Pauline Wright and the car was used by all
of the appellants. In the exceptions filed
by the appellants, all alleged the car was
not an asset of the estate and constituted
a gift to Pauline Wright. Those appellants
who testified gave testimony substantially
supporting the allegation of the exceptions
to the final account. The circumstances
also amount to a disclaimer by appellants.
We are of the opinion that the judgment in
this particular respect is clearly against the
weight of the evidence. The car or the
value thereof should be stricken as an as-
set and Pauline Wright not charged there-
for.

■ Appellants further contend execu-
tor is not entitled to an executor's fee be-
cause he violated his fiduciary duty and fur-
ther that he should personally pay interest
on the legacies because of delay in payment.
As reflected in this decision we have, with
a minor exception, sustained the acts of the
executor and found no violation of fiduci-
ary duty. As to delay in payment of lega-
cies, it appears that the deceased had an
interest in her husband's estate and that
the closing of that estate was held up be-
cause of controversies raised therein by one
or more of the appellants. That estate was
finally distributed in May, 1957. The set-
tlement of the present estate has also been

delayed by objections raised by appellants. We will not disturb the lower court's judgment in the allowance of fees to the executor nor denial of claims for interest on the legacies. See In re Cook's Estate, 193 Okl. 400, 144 P.2d 105.

We will now dispose of the cross-appeal of Fullerton, Jr., as executor and individually. These involve the correctness of the lower court's judgment in adjudging that he "owes, and should refund, the amount of $26,754.02 to the Estate for Taxes." The county court made no such order. There is no finding or statement as to how this amount was computed or the items and their values upon which estate tax was improperly paid.

It is argued in support of the surcharge that the note of Fullerton, Jr., for $27,067.-76 was wrongfully included in the estate tax return and the tax paid thereon at face value. Admittedly it had no such value since it earned no interest until after maturity and became due January 13, 1959, or over 7 years after making the tax return. Furthermore, as affirmed herein, it did not represent an indebtedness of the makers. The executor states that considering other factors and circumstances, the estate was not prejudiced. The record reflects that a correction return and claim for refund was prepared, but was not filed for the reason that it was believed that a good overall settlement of the estate tax liability had been made which might be lost if the matter of tax liability was reopened. Also any loss was recovered or at least reduced by offsetting the recoverable refund against an additional tax liability because of omission from the tax return of a stucco building which deceased had deeded to one of the appellants with reservation of a life estate in deceased. (68 O.S.1961 § 989e, par. (A) (3).) In addition the executor points out that the conveyance of the lands on January 13, 1949, in connection with which the note was given, was within 2 years of deceased's death and, being without an equivalent monetary consideration, would under the provisions of 68 O.S.1961 § 989e, par. (A) (2), and 26 U.S.C.A. § 2035, par. (b), have subjected the estate to a consequential tax liability. Executor urges that it makes no practical difference that the estate tax was paid on the amount of the note or the equivalent value of the land.

█ Under these circumstances we deem it unreasonable to conclude that any of this portion of the estate tax could rightfully be surcharged to the executor. If in fact it constituted a part of the surcharge then it is clearly against the weight of the evidence.

█ Another ground advanced in support of the judgment surcharging the executor is that the executor erred in paying the estate tax from the residuary estate. From our reading of the will and in accordance with our conclusions herein there is no question but that the deceased died testate. The will did not contain any direction or designate the source from which estate taxes were to be paid. In In re Rettenmeyer's Estate, Okl., 345 P.2d 872, this court stated:

"Where will did not designate specific source from which taxes, debts, and expenses of administration was to be paid, but all estate property was disposed of by will, residuary estate would, under Oklahoma law, bear burden of all debts, including taxes and costs of administration. 84 O.S.1951 § 3."

It is our conclusion that under the record the lower court erred in surcharging the executor and this portion of the judgment is reversed.

Affirmed in part and reversed in part.

WILLIAMS, C. J., and WELCH, HALLEY, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, V. C. J., and BERRY, J., dissent.